**Fred W. HOOVER, Plaintiff,**

v.

**Robert VAN STONE and First Jersey Securities, Inc., Defendants.**

**Civ. A. No. 80–102.**

United States District Court, D. Delaware.

May 19, 1982.

C. Walter Mortenson and E. Alan Uebler of Mortenson & Uebler, P. A., Wilmington, Del., for plaintiff.

Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, Del., and Clarkson S. Fisher, Jr., of Robinson, Wayne, Greenberg, Levin, Riccio & LaSala, Newark, N. J., of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

In this case, the Court is called upon to consider the scope of the absolute privilege accorded to statements made during the course of judicial proceedings. Plaintiff, Fred W. Hoover, has filed suit against the

brokerage firm of First Jersey Securities, Inc. ("First Jersey"), and one of its agents, Robert Van Stone, for alleged violations of the federal securities laws. Defendants have filed a counterclaim charging plaintiff with defamation, tortious interference with contractual relationships, abuse of process, and barratry, arising from plaintiff's disclosure to certain of defendants' customers of the existence of this suit, and, in some instances, the details underlying the complaint. Presently before the Court is plaintiff's motion for summary judgment on the counterclaim on the ground that these contacts with defendants' customers represented communications with potential witnesses which are absolutely privileged.[1] For the reasons discussed in this opinion, the Court concludes that the summary judgment motion must be granted.

## I. FACTS

The undisputed facts may be summarized as follows:[2] The complaint alleges that from July 1, 1978 to January 1, 1979, the defendants persuaded Hoover to purchase shares in three financially troubled corporations, NAC, Inc., Pubco Corporation and Data Access Systems, Inc., by making false and misleading statements of material fact. (Docket Item ["D.I."] 1.) Since the time of purchase, these shares have drastically declined in value, contrary to Van Stone's projected performance estimates for the stock, upon which Hoover purportedly relied. In addition, Hoover claims to have sold certain of his holdings in several profitable corporations in order to purchase stock in the three corporations recommended by Van Stone, to his obvious detriment. (*Id.*)

During the course of discovery, plaintiff sought through interrogatories the identification of all persons for whom Van Stone had effected similar stock purchases in the three named corporations over a seven month period, from June 1, 1978 to January 1, 1979. (D.I. 8.) Defendants objected to this discovery (D.I. 13), and plaintiff duly filed a motion to compel. (D.I. 15.) The Court ordered defendants to respond to the challenged interrogatories, finding that the narrow request was relevant to the subject matter of the suit and could lead to admissible evidence. (D.I. 22.)

Within a month of this order, defendants notified Hoover that it would be impossible to identify specifically those customers of Van Stone's who purchased shares in the three corporations during the relevant period. (D.I. 29.) Instead, defendants supplied plaintiff with a list of 220 names representing *all* customers serviced by Van Stone during the seven months and offered to allow plaintiff to inspect business records in First Jersey's offices for the purpose of culling out whatever other specific information was needed. (*Id.*) Following receipt of this information, plaintiff's attorneys sent the following form letter to each of the 220 persons on the customer list:

> Re.: Fred W. Hoover, Plaintiff,
> v.
> Robert Van Stone and First Jersey Securities, Inc., Defendants,
> Civil Action No. 80–102
> United States District Court
> <u>For the District of Delaware</u>

This firm represents Fred W. Hoover in the captioned civil action. During proceedings in this case, the defendants have indicated to us that you were a customer of First Jersey Securities serviced by Robert Van Stone while he was employed by First Jersey.

---

1. Although plaintiff's formal motion simply requested dismissal of the counterclaim without citation to any of the federal rules, in his opening brief, Hoover characterized the motion as a request for summary dismissal under Rule 56, F.R.Civ.P. In addition, plaintiff's argument relies upon facts outside the pleadings. Accordingly, the Court has treated the motion to dismiss as one for summary judgment in accordance with the provisions of Rule 12(b), F.R. Civ.P.

2. These undisputed facts have been distilled from the pleadings, depositions, affidavits and answers to interrogatories contained in the record, pursuant to Rule 56(c), F.R.Civ.P. Defendants have failed to submit any opposing affidavits or to otherwise attempt to refute or deny *any of the facts recited above. The issue of absolute privilege is thus ripe for summary disposition. See Tilden Financial Corp. v. Palo Tire Service, Inc.*, 596 F.2d 604, 607–08 (3d Cir. 1979); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir. 1975).

If you purchased shares of stock of any of Pubco Corporation, NAC, Inc., or Data Access Systems, Inc., through Mr. Van Stone, in the time period June 1, 1978 to January 1, 1979, we would appreciate being advised of such purchase(s). We request that you check the appropriate line(s) below to indicate such purchases and return this letter to us in the enclosed, self-addressed, postage prepaid envelope. The copy of this letter which is also enclosed is for your files.

Thank you.

Yours truly,

E. Alan Uebler

EAU/mwu
Enclosures

———— Pubco Corporation

———— NAC, Inc.

———— Data Access Systems, Inc.

Data given by: ————

(D.I. 71.)

In addition, Hoover himself contacted seven individuals on the customer list with whom he was personally acquainted and described to them the allegations of the complaint. (D.I. 42 at 282–302; D.I. 87.) Hoover further stated to these individuals that he felt he had been "misled" by First Jersey and Van Stone, asked the customers if "[they] had any experience that was similar to [his]," (D.I. 42 at 285), and generally inquired about their transactions with Van Stone.

Upon discovering that these contacts had been made, defendants sought leave to file a counterclaim charging plaintiff with defamation, tortious interference with contractual relationships, abuse of process, and barratry. (D.I. 56.) The motion to file the counterclaim was granted by the United States Magistrate over Hoover's strenuous objection. (D.I. 76.) Hoover has now moved for summary dismissal of the counterclaim under Rule 56, on the ground that the communications with defendants' customers were statements made during the course of a judicial proceeding, designed to elicit relevant evidence, and as such are absolutely privileged. (D.I. 94.)[3]

## II. JUDICIAL PROCEEDINGS PRIVILEGE

■ Because defendants' permissive counterclaim is predicated on diversity of citizenship jurisdiction, the Court must follow Delaware conflict of laws rules in determining what substantive law to apply. Under these rules, the substantive rights of the parties to a tort action are governed by the law of the place in which the tort occurred. *Read v. Baker*, 430 F.Supp. 472, 476 (D.Del.1977). In this case, the alleged publication of defamatory material giving rise to the various counts of the counterclaim occurred in Delaware; therefore, the application of the absolute privilege must be measured by Delaware substantive law.

■ The Courts of this state have recognized the general principle that otherwise defamatory statements made by judges, parties, witnesses and attorneys, during the course of judicial proceedings, are absolutely privileged, and may not give rise to a cognizable legal claim. *See Short v. News Journal Company*, 212 A.2d 718, 719 (Del. Super.1965); *McLaughlin v. Copeland*, 455 F.Supp. 749, 751 (D.Del.1978), *aff'd without opinion*, 595 F.2d 1213 (3d Cir. 1979); *Read v. Penn Central Company*, C.A. No. 79–207 (D.Del. Jan. 28, 1982) (unpublished); *Tatro v. Esham*, 335 A.2d 623, 626 (Del.Super. 1975). This principle is subject to only one limitation. Besides being made in the course of a judicial proceeding, the privileged statements must be relevant or pertinent to the case. This requirement of relevancy, however, has been liberally construed. Strict legal relevance need not be demonstrated; instead the allegedly defamatory statements must have only some connection to the subject matter of the pending action. *See* 50 Am.Jr.2d, Libel and Slander § 237; Annot. 23 A.L.R.3d 1172, 1176 (1969), and cases cited therein.

**3.** Defendants have filed a motion to strike from the record an exhibit attached to plaintiff's reply brief in support of the summary judgment motion. (D.I. 108.) This exhibit is a copy of a March 1, 1982 article appearing in *Forbes* magazine which is critical of First Jersey's operations. The Court agrees that this article must be stricken and not considered in connection with plaintiff's summary judgment motion. An appropriate order will be entered to that effect.

■ The purpose served by the absolute privilege is to facilitate the flow of communication between persons involved in judicial proceedings and, thus, to aid in the complete and full disclosure of facts necessary to a fair adjudication. *See Sriberg v. Raymond,* 544 F.2d 15, 16 (1st Cir. 1976). To accomplish this goal, the privilege protects judges, parties, attorneys, witnesses and other persons connected with litigation from the apprehension of defamation suits, thus permitting them to speak and write freely, without undue restraint. *See Devlin v. Greiner,* 147 N.J.Super. 446, 371 A.2d 380 (1977); *Fenning v. S. G. Holding Corp.,* 47 N.J.Super. 110, 135 A.2d 346 (N.J.Super. 1957). Moreover, the protection afforded by the privilege is absolute; so long as the statement is pertinent to, and made in the course of, a judicial proceeding, even a showing of malice will not divest the statement of its immune status. *Middlesex Concrete Products v. Carteret Ind. Ass'n,* 68 N.J.Super. 85, 172 A.2d 22, 25 (Div.1961); Restatement (Second) of Torts, Ch. 25, Topic 2, Title B at 243.

At the outset, the Court must address the first prerequisite for claiming the absolute privilege—whether the allegedly defamatory statements in this case were made during the course of a judicial proceeding, and thus arose in a privileged context. If the occasion on which the statements were made is privileged, the Court must then determine whether the contents of the statements were pertinent to this action. *See Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 698 (8th Cir. 1979).

Defendants argue that the oral statements made by Hoover to the seven individuals on the customer list and the representations contained in the letter written by Hoover's attorneys were not made during the course of a judicial proceeding and, therefore, cannot fall within the ambit of the absolute privilege. Defendants essentially contend that unless the allegedly defamatory statements are made in open court or in a document filed with the court, in which judicial discipline may be brought to bear on calumnious conduct, the absolute privilege may not be invoked. Plaintiff predictably disputes the narrow compass given to the absolute privilege by the defendants, arguing that disclosure of the allegations of the complaint to potential witnesses during pre-trial discovery is appropriately covered by the privilege.

■ The courts traditionally have applied the absolute privilege without differentiation to statements made during the course of formal pre-trial discovery procedures and other extra-judicial proceedings necessary to resolve pending litigation. Annot. 23 A.L.R.3d 1172, 1174 (1969). For example, statements made during depositions, conferences between witnesses and counsel, and settlement negotiations, when pertinent to the underlying suit, have been deemed protected by the absolute privilege. *See e.g., Petty v. General Accident Fire & Life Assurance Corp.,* 365 F.2d 419, 421 (3d Cir. 1966); *McLaughlin v. Copeland, supra,* 455 F.Supp. at 751–52; *Tatro v. Esham, supra,* 355 A.2d at 627; *Weiler v. Stern,* 67 Ill. App.3d 179, 23 Ill.Dec. 855, 384 N.E.2d 762 (Super.App.Div.1978). This treatment is founded on the unimpeachable premise that events taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the privilege, than in-court proceedings. *See Tatro v. Esham, supra,* 335 A.2d at 627; *Middlesex Concrete Products v. Carteret Ind. Ass'n, supra,* 172 A.2d at 25.

Admittedly, application of the absolute privilege in these contexts may conceivably allow a party to engage in malicious fabrication with impunity, neither the threat of a perjury indictment nor the specter of judicial sanctions being present. Confining the privilege to in-court proceedings in which the Court could impose sanctions for, or otherwise control, the dissemination of defamatory statements would have the salutary effect of curbing the frequency or blunting the impact of such improper conduct. Such safeguards, however, would also inhibit the dispatch with which a potential witness would likely come forward with relevant evidence, impede the ability of a litigant to engage in intelligent discovery and needlessly encumber settlement

negotiations. Thus, although application of the privilege to events occurring outside of court may sometimes lead to harsh results, the potential for abuse is outweighed by the need for complete candor in these preliminary trial proceedings.

■ Dissemination of the contents of a complaint to the public or to third parties unconnected with the underlying litigation, on the other hand, generally is not sufficiently related to the judicial proceeding to give rise to the privilege. *Asay Hallmark Cards, Inc., supra,* 594 F.2d 698. Thus, distribution of the complaint to the news media, *id.,* or to members of the defendants' trade, *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333 (Supr. 1969), will not constitute a privileged occasion. This approach is consistent with the public policy underpinnings of the privilege itself. Allowing defamation suits for unqualified disclosure of defamatory statements to the news media or to competitors or customers of a party ordinarily will not inhibit the full exposition of facts necessary for an equitable adjudication. *See Asay v. Hallmark Cards, Inc., supra,* 594 F.2d at 692.

■ The recipients of the allegedly defamatory information in this case fall within the interstices of the two types of situations described above. The customers contacted by the plaintiff and his attorney in this case were neither actual witnesses to be consulted preliminary to trial nor disinterested third parties unconnected with the suit. Instead, these individuals were *potential* witnesses from whom plaintiff hoped to secure admissible evidence. Obviously, a broadly drawn rule immunizing defamatory statements made to any individual deemed a "potential witness" could be considerably exploited and lead to substantial hardship not justified by the purposes underlying the privilege. For this reason, in instances where communications are made to alleged potential witnesses, the court must particularly evaluate the factual circumstances peculiar to each case to determine whether

application of the privilege is warranted. *See Brown v. Collins,* 402 F.2d 209, 213 (D.C.Cir.1968).

■ The Court concludes that the contacts and consultations with defendants' customers in this case were preliminary steps in the preparation of plaintiff's case and thus were made during the course of a judicial proceeding. The communications were made to a limited and discrete group of Van Stone's customers for the purpose of obtaining evidence for trial.[4] No attempt was made to circulate the allegedly defamatory information beyond that class of persons who could provide pertinent evidence on Van Stone's practices during the period in which he represented Hoover. Moreover, if relevant communications between Hoover and these potential witnesses were not privileged, it is unlikely that Hoover, or similarly situated persons, would be able to engage effectively in the investigation needed to prepare intelligently for trial. Accordingly, based on the undisputed facts presented by this case, the Court concludes, as a matter of law, that the disclosures made to Van Stone's customers were sufficiently related to the underlying securities suit to qualify as a suitable occasion for exercising the privilege.

Having concluded that the alleged defamatory statements were made during the course of a judicial proceeding, it is a relatively simple task to further conclude that the contents of these communications were pertinent to that proceeding. The disclosure of the existence of the suit in the form letter sent to Van Stone's customers and the description of the allegations of the complaint to the seven acquaintances of Hoover were reasonably calculated to obtain responsive information concerning each customer's transactions with Van Stone. Common sense suggests, and defendants do not dispute the fact, that any relevant information concerning the personal business affairs of Van Stone's customers would not

---

4. The rather innocuous letter sent by plaintiff's attorney to the unsegregated list of 220 customers provided by defendants was an attempt by plaintiff to separate the "chaff from the wheat," an effort that the defendants were unable or unwilling to undertake although ordered to do so by the Court. (D.I. 22.)

likely be forthcoming without first apprising the individuals of the reasons why the information was sought. The uncontroverted facts, moreover, indicate that no extraneous defamatory comments, not relevant to the allegations of securities fraud contained in the complaint, were made to the customers. Accordingly, the alleged defamatory statements made in this case were pertinent to the subject matter of the suit and are absolutely privileged.

Defendants argue that even if the absolute privilege bars an action for defamation, it does not preclude the prosecution of the three other counts contained in the counterclaim. These counts, however, are all predicated on the very same acts providing the basis for the defamation claim. Application of the absolute privilege solely to the defamation count, accordingly, would be an empty gesture indeed, if, because of artful pleading, the plaintiff could still be forced to defend itself against the same conduct regarded as defamatory. Maintenance of these kindred causes of action, moreover, would equally restrain the ability of judges, parties, counsel and witnesses to speak and write freely during the course of judicial proceedings. *See McLaughlin v. Copeland, supra,* 455 F.Supp. at 752; *Middlesex Concrete Products v. Carteret Ind. Ass'n, supra,* 172 A.2d at 25. As one court has observed:

> [i]f the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

*Ranier's Dairies v. Raritan Valley Farms,* 19 N.J. 552, 117 A.2d 889, 895 (N.J.Super. 1955), *quoted in McLaughlin v. Copeland, supra,* 455 F.Supp. at 752. For these reasons, the remaining counts of the counterclaim likewise are barred by the absolute privilege and cannot be maintained as a matter of law.

For the reasons discussed above, summary judgment on defendants' counterclaim will be entered in favor of the plaintiff and an order will be so entered.