Ellen BARKER, Plaintiff
Below, Appellant,

v.

Peter S. HUANG and Insurance Cor-
poration of America, Defendants
Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 12, 1991.
Decided: June 11, 1992.
Rehearing Denied July 27, 1992.

Bruce L. Silverstein (argued), and Ben T. Castle of Young, Conaway, Stargatt & Tay-lor, Wilmington, for plaintiff below-appellant.

Victor F. Battaglia (argued), and Francis S. Babiarz of Biggs & Battaglia, Wilmington, for defendant below-appellee Peter S. Huang, M.D.

F. Alton Tybout (argued), of Tybout, Redfearn & Pell, Wilmington, for defendant below-appellee Insurance Corp. of America.

Before HORSEY, MOORE and HOLLAND, JJ.

HORSEY, Justice:

This is an appeal from Superior Court's grant of summary judgment in favor of defendants, Dr. Peter S. Huang ("Huang") and Insurance Corporation of America ("ICA"). The plaintiff, Ellen Barker ("Barker"), filed a complaint in Superior Court, seeking damages for defamation of character, libel, slander, tortious invasion of privacy, wrongful use of civil proceedings, abuse of process, intentional infliction of emotional distress, outrageous conduct and civil conspiracy to engage in each of the foregoing torts. The defendants moved for summary judgment and for dismissal, on grounds of absolute privilege. Accompanying her response to defendants' motions, Barker filed a supporting affidavit, alleging statements by Huang which would not be protected by an absolute privilege. We affirm Superior Court's decision finding meritless Barker's claims against Huang as originally stated in her complaint, and Barker's claims against ICA. However, we find Superior Court to have erred by failing to properly consider Barker's affidavit as a motion to amend her complaint, raising new claims against Huang to which Huang has asserted no defense. To the extent that Barker's affidavit makes a claim of defamation arising from statements made by Huang unprotected by an absolute privilege, summary judgment was inappropriate. We therefore reverse in part, and remand.

*Background*

In June 1987, defendant Huang, a Wilmington, Delaware, physician, was sued in Superior Court by four former patients, charging him with various intentional torts arising from an alleged series of sexual assaults. *Rochen v. Huang,* C.A. No. 87C–JN–96 ("the *Rochen* litigation"). Defendant ICA was at that time Huang's medical liability insurance carrier. Defendant Huang, represented by an attorney provided by ICA, later filed a counterclaim against the *Rochen* plaintiffs, alleging that they had conspired to falsely accuse Huang of sexual assault. Barker was not a party to the *Rochen* litigation. However, in support of defendant's counterclaim, Huang alleged in a deposition that Barker had conspired with the *Rochen* plaintiffs against Huang. The *Rochen* pleadings were ordered to be placed under seal on July 15, 1987. That order was vacated, however, on September 14, 1988. Shortly thereafter, on September 25 and 27, 1988, a Wilmington newspaper, *The News Journal,* published two articles concerning the *Rochen* suit and Huang's counterclaim implicating Barker. Both articles referred to Huang's allegation, as contained in his pleadings and deposition testimony, that Barker was conspiring against Huang. One article reported that Huang claimed Barker was carrying out a "vendetta" against him because she was bitter over his having stopped a medical study that she was coordinating with him. The article also reported that Huang claimed that Barker had slept with Huang in an effort to persuade him to continue the study. Similar articles in other newspapers followed, as did radio and television broadcasts. Shortly before the *Rochen* trial was to begin, the court, on Huang's motion, dismissed the counterclaim with prejudice. Barker filed this suit in May 1990.

On July 10, 1990, Huang, without answering the complaint, filed a motion for summary judgment under Superior Court Rule 56(b). Huang asserted that any statements he had made regarding Barker had been made exclusively during the course of legal proceedings, in the course of the *Rochen* counterclaim, and were therefore protected by an "absolute privilege." Nearly contemporaneously, ICA filed a motion under Rule 12(b)(6) to dismiss the complaint for failure to state a claim.

Shortly thereafter, when Barker served Huang with interrogatories, Huang moved for a protective order barring discovery. Huang asserted that discovery should be postponed until resolution of his motion for summary judgment, and that Barker's interrogatories requested material protected by the attorney-client privilege. On July 20, 1990, defendant Huang filed a pleading styled as an amended motion for dismissal and summary judgment, in which he restated his prior motion but sought in the alternative to dismiss the complaint for failure to state a claim for relief.

On August 29, 1990, Barker filed a "Consolidated Response to Defendants' Pending Motion for Dismissal, Summary Judgment and for a Protective Order," with supporting affidavit, ostensibly to counter Huang's defense of absolute privilege. In her affidavit, Barker averred (arguably for the first time) [1] that Huang had, "on at least one occasion," made numerous defamatory statements about plaintiff while being interviewed by a newspaper reporter. Barker alleged that these interviews "occurred wholly outside of the course of any judicial proceeding," and that many of Huang's statements were "wholly unrelated to any issue involved in any judicial proceeding."

On October 30, 1990, Superior Court held a recorded office conference on the defendants' then pending motions for dismissal, summary judgment, and a protective order. Barker there asserted that a Chinese newspaper had published, in Chinese, an interview with Huang, portions of which were later republished by the *News Journal.* Barker argued that the information in the Chinese newspaper was not derived from

---

**1.** Barker argues on appeal that the complaint provided sufficient notice that Huang made statements which would not be subject to the defense of absolute privilege. Her complaint, however, makes no allegation that Huang gave interviews to the news media or that Huang made any defamatory statements other than in the course of the counterclaim. See I.B. below.

court records; Barker implied that this was the interview to which she had referred in her earlier affidavit.

Later, on January 2, 1991, Barker served Huang with a request for admission. Attached to the request were three pages of text printed in Chinese, from an October 1988 issue of a publication called the *World Journal*. Plaintiff requested that Huang admit that the articles "accurately report the substance of two interviews of Huang that were conducted by the author of the two articles." Huang objected to the request and declined to respond on the ground that the request was irrelevant and vague.

By order dated February 22, 1991, the Superior Court granted defendants' motions for summary judgment[2] on all of Barker's claims. The court found that the defendant Huang's motions for protective orders were therefore moot. Barker then docketed this appeal.

## I. Barker's Defamation Claims

Barker first contends that Superior Court erred in granting summary judgment with respect to her defamation claims against Huang. There are two parts to this claim, which must be examined separately. First, Barker argues that the court's grant of summary judgment of her claim that Huang made defamatory statements during the course of the *Rochen* litigation was in error because the court failed to give her an opportunity through discovery to establish facts in support of the applicability of a "sham litigation" exception to Huang's defense of absolute privilege. Second, Barker argues that the court's grant of summary judgment of her claim that Huang made defamatory statements wholly outside the judicial context was in error because Huang had failed to come forward with any denial of having made such statements. Where Superior Court grants summary judgment, "[t]he scope of our review is ... unqualified." *Merrill v. Crothall-American*, Del.Supr., 606 A.2d 96 (1992).

### A. Statements Allegedly Made By Huang in the Course of the *Rochen* Litigation

■ Superior Court found that the defense of absolute privilege was plainly applicable to the defamatory statements allegedly made by Huang in the course of the *Rochen* litigation, and that Barker had failed to "present an exceedingly strong factual showing [necessary] in order to defeat the operation of the privilege."

Barker argues that the court erred in placing upon her, as the non-moving party, a burden of coming forward with evidence in support of the applicability of the "sham litigation" exception when Huang, the moving party, had failed to come forward with any denial. Barker argues in the alternative that even if a burden of production had correctly shifted to her, that burden should have been excused by her lack of opportunity to undertake discovery. *See Mann v. Oppenheimer & Co.*, Del.Supr., 517 A.2d 1056 (1986).

Huang responds that no "sham litigation" exception to the absolute privilege exists under the law of Delaware; he argues, in the alternative, that if such an exception does exist, Barker failed to carry the appropriately heavy burden of coming forward with specific facts to establish a material question of fact as to whether Huang's *Rochen* counterclaim was a sham.

\* \* \* \* \* \*

■ Generally, defamation is subject to liability. *Tatro v. Esham*, Del.Super., 335 A.2d 623, 625 (1975). However, affirmative defenses to a prima facie case exist for statements made in certain contexts where there is a particular public interest in unchilled freedom of expression. *See Read v. News–Journal Co.*, Del.Supr., 474 A.2d 119, 120 (1984) (qualified privilege for publication of fair reports of judicial proceedings). *See also Dairy Stores, Inc. v. Sentinel Publishing Co.*, N.J.Supr., 516 A.2d 220 (1986); *Irwin v. Cohen*, 40 Conn.

---

**2.** The Superior Court treated defendants' motions as being for summary judgment because Barker's response raised materials outside the pleadings, *i.e.*, her affidavit. Super.Ct.Civ.R. 12(b).

Supp. 259, 490 A.2d 552 (1985); *Supry v. Bolduc,* 112 N.H. 274, 293 A.2d 767 (1972). One such defense is the "absolute privilege." *Tatro,* 335 A.2d at 625–626. The absolute privilege is a common law rule, long recognized in Delaware, that protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to a matter at issue in the case. *Klein v. Sunbeam Corp.,* Del.Supr., 94 A.2d 385, 392 (1953). *See Hoover v. Van Stone,* D.Del., 540 F.Supp. 1118, 1121 (1982); *Nix v. Sawyer,* Del.Super., 466 A.2d 407, 410 (1983); *Short v. News Journal,* Del.Supr., 212 A.2d 718, 719 (1965). However, statements made outside of the course of judicial proceedings, such as those made during a newspaper interview concerning judicial proceedings, are not accorded the protection of the absolute privilege. *Id.*

Barker's argument for the existence of a sham litigation exception under Delaware law is premised on the Superior Court's opinion in *Nix v. Sawyer,* Del.Super., 466 A.2d 407 (1983). In *Nix,* the foundation of the plaintiff's defamation claim was a verified complaint and supporting sworn affidavits which had been filed by the *Nix* defendants in another action. 466 A.2d at 410. The defendants countered by filing a motion to dismiss based on the absolute privilege. The plaintiffs urged the *Nix* court "to adopt an exception in cases where the lawsuit advanced is proven to be a sham," citing for this proposition the case of *Cooper v. Armour,* 2d Cir., 42 F. 215 (1890). *Id.* at 411. The *Nix* court held that the plaintiffs there had failed to make "an exceedingly strong factual showing [necessary] in order to defeat operation of the privilege." The *Nix* court did *not* hold, however, that a sham litigation exception exists in Delaware. Instead, it merely stated in effect that, *even if* such an exception to the absolute privilege exists, it was not applicable to the facts then before the court. Our reading of *Nix* thus indicates that the court did not, as Barker claims, affirmatively adopt the exception. In fact,

the *Nix* court even pointed out that plaintiffs' reliance on *Cooper* was questionable when it noted that "the proposition for which plaintiffs cite the [*Cooper*] decision, is at best, only implied." *Id.* at 411, n. 5.

The well-recognized policy supporting the absolute privilege militates against creation of a sham litigation exception. *See Read,* 474 A.2d at 120.

> The purpose served by the absolute privilege is to facilitate the flow of communication between persons involved in judicial proceedings and, thus, to aid in the complete and full disclosure of facts necessary to a fair adjudication. To accomplish this goal, the privilege protects judges, parties, attorneys, witnesses and other persons connected with litigation from the apprehension of defamation suits, thus permitting them to speak and write freely, without undue restraint. Moreover, the protection afforded by the privilege is absolute; so long as the statement is pertinent to, and made in the course of, a judicial proceeding, *even a showing of malice* will not divest the statement of its immune status.

*Hoover v. Van Stone,* D.Del., 540 F.Supp. 1118, 1122 (1982) (emphasis added) (citations omitted). As the *Nix* court pointed out, "the interest in encouraging a litigant's unqualified candor as it facilitates the search for truth is deemed so compelling that the privilege attaches even where the statements are offered maliciously or with knowledge of their falsity." 466 A.2d at 411. *See Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895, 919–20 (1978); *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337 (1986); *Circus Circus Hotels, Inc. v. Witherspoon,* 99 Nev. 56, 657 P.2d 101 (1983).

To allow claims of defamation in the context of judicial proceedings to proceed to costly discovery in an attempt to ferret out facts purporting to show a sham nature to the litigation would largely defeat the purpose of the privilege. Moreover, sufficient sanctions already exist to deter and punish frivolous litigation. *See, e.g.,* Super.Ct.Civ.R. 11. We therefore hold that no "sham litigation" exception to the de-

fense of absolute privilege exists under the law of Delaware. Other states have similarly held. *See, e.g., Keys v. Chrysler Credit Corp.,* 303 Md. 397, 494 A.2d 200, 204 (1985) ("even the intentional and wrongful bringing or maintaining of litigation will not destroy the absolute privilege that attends the litigation"). Barker's claim that Superior Court erred when it summarily rejected her reliance upon the "sham litigation exception" for failing to present an "exceedingly strong factual showing to defeat operation of the privilege" is therefore moot. *See Irwin v. Cohen,* 40 Conn.Supp. 259, 490 A.2d 552, 555 (1985).

**B. Statements Allegedly Made By Huang Outside the *Rochen* Litigation**

██ However, this holding does not dispose of the matter. Barker also argues on appeal that Superior Court erred in granting summary judgment of her claims that Huang made defamatory statements wholly outside of judicial proceedings. As to such claims, Barker argues, no sham litigation exception is necessary, because the defense of absolute privilege is inapplicable by its terms. Huang responds, however, that Barker never fairly asserted below any claims to which the defense of absolute privilege would be inapplicable, and cannot retroactively defeat summary judgment by asserting such claims for the first time on appeal. We must therefore first determine whether in fact Barker ever asserted any claims below regarding allegedly defamatory statements made *outside* the judicial context.

Huang contends that Barker's complaint gave him notice only of claims regarding statements made in the course of litigation. Huang further contends that Barker's affidavit contained only "vague references to non-judicial statements" and failed to put him on notice of any such claims, in the absence of a request by Barker to amend her complaint. Barker, on the other hand, contends that her complaint can fairly be read to allege that Huang made defamatory statements outside of judicial proceedings, such as would not be covered by

the absolute privilege. We find neither party's position to be well taken.

After careful examination of Barker's complaint, we find nothing in it from which one could fairly infer that plaintiff complained of any defamatory statements made outside the judicial context. The newspaper articles quoted in Barker's complaint, which are alleged to be the defamatory publication, each by their own words profess to be reports of court documents, rather than of direct interviews. One article even notes that "Huang has declined comment on the case." We conclude that Barker's complaint asserts against Huang only defamation claims arising from litigation and thus covered by the defense of absolute privilege. The remaining question then, is the effect of Barker's affidavit.

██ In *Johnson v. Mateer,* the Court of Appeals for the Ninth Circuit examined a District Court's grant of summary judgment against a plaintiff asserting civil rights violations by state employees. 9th Cir., 625 F.2d 240 (1980). The District Court had found that the plaintiff's vague complaint had only alleged claims which had been previously adjudicated and which were therefore barred by collateral estoppel. The plaintiff had raised other claims in an affidavit filed in response to the defendants' motion for summary judgment. The Court of Appeals reversed, stating:

> [Plaintiff's] failure to articulate the basis for his civil rights claim at the pleading stage should not have been fatal to his claim, as his affidavit filed in opposition to the motion for summary judgment made factual allegations regarding property deprivation and harassment.... The district court should have construed the affidavit as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time and should have determined whether, based on the contents of the affidavit read with the complaint, triable issues of fact existed.

*Id.* at 242. *See also Rossiter v. Vogel,* 2d Cir., 134 F.2d 908, 912 (1943) ("where facts appear in affidavits upon motion for a summary judgment which would justify an

amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment"); 6 Moore's Federal Practice ¶ 56.10. Superior Court Civil Rule 15 is precisely the same as its counterpart in the Federal Rules. *Filliben v. Jackson*, Del.Supr., 247 A.2d 913 (1968).

With these authorities in mind, we examine Barker's affidavit. The affidavit states, in part:

> ... [O]n at least one occasion after May 25, 1988, Huang was interviewed (at least twice) by a newspaper reporter, and in the course of the interviews, Huang made numerous false and defamatory statements about me. Not only were the interviews events that occurred wholly outside of the course of any judicial proceeding, but many of Huang's false and defamatory statements about me were wholly unrelated to any issue involved in any judicial proceeding.

Huang's characterization to the contrary notwithstanding, we find this portion of Barker's affidavit to have fairly stated a claim that Huang made defamatory statements outside of the judicial context. *See Diamond State Tel. Co. v. University of Delaware*, Del.Supr., 269 A.2d 52, 58 (1970); *Klein v. Sunbeam Corp.*, Del. Supr., 94 A.2d 385, 391–92 (1953); *Pfeifer v. Johnson Motor Lines, Inc.*, Del.Super., 89 A.2d 154, 156–57 (1952).

"The purpose of summary judgment is to avoid the delay and expense of a trial where the ultimate fact finder, whether judge or jury, has nothing to decide. Thus, entry of summary judgment is proper only where there are no material factual disputes." *Merrill v. Crothall–American,*

*Inc.*, Del.Supr., 606 A.2d 96 (1992) (citation omitted). The Superior Court treated the above quoted passage from Barker's affidavit as merely an attempt to provide facts to bolster the claims made in her complaint regarding defamatory statements made in the course of litigation. However, Barker's affidavit, fairly read, alleged new claims, i.e., that Huang had made defamatory statements *outside* of the judicial context. *Johnson*, 625 F.2d 240.[3] Huang's only asserted defense, the absolute privilege, would not apply to such statements. *Hoover v. Van Stone*, D.Del., 540 F.Supp. 1118, 1123 (1982).[4] Accordingly, Barker's unrebutted affidavit was sufficient to establish the existence of a material issue of fact, and Superior Court's grant of summary judgment of Barker's claims of defamatory statements made outside the judicial context was in error. *Id.* On remand, we direct Superior Court to grant Barker leave to amend her complaint to include these claims as made in her affidavit.

## II. Barker's Non–Defamation Claims

Barker also argues that Superior Court abused its discretion in reaching *sua sponte* her claims of torts other than defamation, libel and slander, and that having reached these claims, Superior Court erred in granting summary judgment on her claims of invasion of privacy and intentional infliction of emotional distress.

Huang's motion for summary judgment or dismissal, as amended, asserted only the affirmative defense of absolute privilege. Barker argues that the absolute privilege, regardless of whether it stands as a bar to her defamation claims, does not bar her

---

**3.** We note that defendant Huang, but not ICA, confused the proceedings below by filing a Rule 56 motion in response to the complaint, when the more appropriate motion was to dismiss under Rule 12(b) for failure to state a claim. Huang's incongruous and untimely motion, before answer, precipitated plaintiff's affidavit, and thus a disorderly record.

**4.** In *Hoover,* the Court noted the rationale for limiting the absolute privilege to the judicial context:

> Dissemination of the contents of a complaint to the public or to third parties unconnected with the underlying litigation, ... gen-

erally is not sufficiently related to the judicial proceeding to give rise to the privilege. Thus, distribution of the complaint to the news media, or to members of the defendants' trade, will not constitute a privileged occasion. This approach is consistent with the public policy underpinnings of the privilege itself. Allowing defamation suits for unqualified disclosure of defamatory statements to the news media or to competitors or customers of a party ordinarily will not inhibit the full exposition of facts necessary for an equitable adjudication.

540 F.Supp. at 1123.

other tort claims. Superior Court agreed, ruling that the absolute privilege would not extend to *all* of Barker's tort claims.[5] However, the court granted summary judgment *sua sponte* with respect to these claims, concluding that Barker had failed to make the required allegations necessary to sustain these torts.

### A. Superior Court's Exercise of Discretion in Reaching the Merits of Barker's Non–Defamation Claims, *Sua Sponte*

██ We first examine Barker's claim that Superior Court abused its discretion in reaching her non-defamation claims.

Barker's complaint simply alleges facts relating to the *Rochen* counterclaim coupled with a laundry list of legal theories:

> By their wrongful acts complained of herein, Defendants Huang and ICA are liable to plaintiff for defamation of character, libel, slander, tortious invasion of her privacy, wrongful use of civil proceedings, abuse of process, intentional infliction of emotional distress, the tort of outrageous conduct, and civil conspiracy to engage in each and every one of the foregoing torts.

Huang's hybrid motion, denominated for summary judgment and/or for dismissal for failure to state a claim, not objected to, generally asserted that plaintiff's complaint failed to plead a claim for relief. ICA's more classic motion, simply to dismiss, asserted that the complaint failed to state a cause of action. The two motions thus were sufficient notice to plaintiff that all of her claims were called into question. Moreover, it is appropriate for a court to act *sua sponte* in the interests of judicial economy. *See Bank of Delaware v. Claymont Fire Company No. 1*, Del.Supr., 528 A.2d 1196, 1199 (1987). Therefore we decline to find Superior Court to have abused its discretion in reaching the merits of Barker's non-defamation tort claims, *sua sponte.*

**5.** The court stated:
... [P]laintiff argues that ... the affirmative defense of absolute privilege would not apply to extinguish plaintiff's claims for relief based

### B. Superior Court's Resolution of Barker's Non–Defamation Claims on their Merits

In determining the merits of Barker's non-defamation claims, Superior Court found the absolute privilege not a bar to such claims, but granted Huang and ICA summary judgment on all of them. Applying a Rule 12(b)(6)–style analysis, the court found that Barker had failed to allege sufficient facts to state a claim under any of her asserted theories. On appeal, Barker apparently abandons her claim below of wrongful use of civil proceedings, abuse of process and conspiracy, and contends only that Superior Court committed legal error in granting summary judgment of her claims of invasion of privacy and intentional infliction of emotional distress. Here again, our review of such claims is *de novo. Merrill,* 606 A.2d at 99.

### 1. Barker's Non–Defamation Claims Regarding Statements Allegedly Made by Huang in the Course of the *Rochen* Litigation

██ As a preliminary matter, we must first examine Superior Court's holding that the defense of absolute privilege would not apply to Barker's non-defamation claims.

In *Hoover v. Van Stone*, the United States District Court for the District of Delaware, interpreting Delaware law, granted summary judgment of the defendants' counterclaim. D.Del., 540 F.Supp. 1118, 1120 (1982). The counterclaim charged plaintiff with defamation, tortious interference with contractual relationships, abuse of process, and barratry, arising from plaintiff's disclosure to certain of defendants' customers of the existence of the suit and details underlying the complaint. The court held that the absolute privilege admitted of a broader application than merely those actions denominated solely in defamation. The court stated:

> Defendants argue that even if the absolute privilege bars an action for defamation, it does not preclude the prose-

on [non-defamation] torts. This would be true if plaintiff had made allegations of tortious conduct amounting to the alleged torts, but she did not.

cution of the three other counts contained in the counterclaim. These counts, however, are all predicated on the very same acts providing the basis for the defamation claim. Application of the absolute privilege solely to the defamation count, accordingly, would be an empty gesture indeed, if, because of artful pleading, the plaintiff could still be forced to defend itself against the same conduct regarded as defamatory. Maintenance of these kindred causes of action, moreover, would equally restrain the ability of judges, parties, counsel and witnesses to speak and write freely during the course of judicial proceedings. As one court has observed: "[i]f the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label."

*Id.,* at 1124 (citations omitted) (quoting *Rainier's Dairies v. Raritan Valley Farms,* 19 N.J. 552, 117 A.2d 889, 895 (1955). *See Deaile v. General Telephone Co. of California,* 40 Cal.App.3d 841, 115 Cal.Rptr. 582 (1974). *See also* Restatement (Second) of Torts, § 652F (privileges to publish defamatory matter also apply to the tort of invasion of privacy); § 46, comment g (conduct, otherwise extreme and outrageous, may be privileged).

We find that Superior Court's ruling, limiting the application of the absolute privilege to Barker's defamation claim, was erroneous as a matter of law. The absolute privilege would be meaningless if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of emotional distress' or 'invasion of privacy' could void its effect. *Hoover,* 540 F.Supp. 1118. However denominated, Barker's claim is that Huang intentionally made derogatorily false statements about her, and that she has been harmed thereby. To the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose liability.

We therefore hold that Barker's claims of invasion of privacy and intentional infliction of emotional distress, to the extent that they complain about statements made by Huang during the course of the *Rochen* litigation, are barred by the absolute privilege. *Id.* Barker's claim, that Superior Court erred in granting summary judgment of her claims that Huang made statements in the judicial context which invaded her right to privacy and constituted an intentional infliction of emotional distress, is therefore moot.

2. Barker's Non–Defamation Claims Regarding Statements Allegedly Made by Huang Outside the *Rochen* Litigation

However, as with Barker's defamation claims, the absolute privilege as applied to Barker's other claims acts as a bar of liability only with regard to statements made during the course of judicial proceedings. As we held in section I above, Barker's complaint and affidavit, viewed together, fairly make out claims that Huang made tortious statements outside the judicial context. We must therefore examine Barker's claim that Superior Court erred in granting summary judgment of her privacy and emotional distress claims to the extent that they relate to statements made by Huang outside the judicial context.

a. Invasion of Privacy

■ The tort of invasion of privacy was originally adopted by this Court in the case of *Barbieri v. News–Journal Co.,* Del. Supr., 189 A.2d 773, 774 (1963). Following Professor Prosser, we therein delineated the four varieties of the tort: (1) intrusion on plaintiff's physical solitude; (2) publication of private matters violating the ordinary senses; (3) putting plaintiff in a false position in the public eye; and (4) appropriation of some element of plaintiff's personality for commercial use. *Id.* at 774. *See Avallone v. Wilmington Medical Center, Inc.,* D.Del., 553 F.Supp. 931, 938–39 (1982).

Barker contends that Superior Court erred in finding that she had failed to allege sufficient facts to state a claim of invasion by Huang of her right to privacy.

Barker argues that her complaint and affidavit have adequately stated a claim under either of the first two varieties of the tort of invasion of privacy listed above.[6] We disagree.

The first variety of the tort of invasion of privacy is denominated in the Restatement as intrusion upon seclusion. Restatement (Second) of Torts § 652B states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Furthermore, comment c to § 652B states, "The defendant is subject to liability ... only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Thus, the *sine qua non* of this variety of the tort of invasion of privacy is clearly *intrusion*.

Reading Barker's complaint and affidavit together, and after putting aside those claims barred by the absolute privilege, we understand Barker to claim only that Huang participated in newspaper interviews in which he intentionally made false allegations of conspiracy against Barker, and that such statements "exposed her to invasions of her privacy...." This is not sufficient. At most, Huang's actions, as alleged by Barker, may have drawn unwanted public attention to Barker, but such acts do not trigger liability under Prosser's first denominated variety of the tort of invasion of privacy. *Avallone*, 553 F.Supp. at 939.

■ Barker also contends that she has fairly alleged a claim under the second variety of the tort of invasion of privacy, involving unwanted publicity. Restatement (Second) of Torts § 652D states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

The Superior Court found that Barker had failed to make allegations amounting to a claim of invasion of privacy because the newspaper articles, which, Barker claims, disclose private and personal details of her life, were not published by Huang, and because their subject was a matter of legitimate public concern, i.e., a lawsuit.

Barker argues that the Superior Court erred in narrowly limiting liability to those who actually "publish," and in finding Huang's accusations of a conspiracy involving Barker to be a matter of public concern. It is not necessary to reach this question, however, because of a more basic deficiency in Barker's allegations with regard to this tort. The Restatement notes that § 652D "provides for tort liability involving a judgment for damages for publicity given to *true statements of fact.*" (emphasis added). This variety of the tort of invasion of privacy thus acts as a counterpart to the tort of defamation, rather than as a duplicate. Restatement (Second) of Torts § 652D. It provides liability for the publicization of true but private facts—acts which would not be covered by defamation, since truth is an absolute defense to a defamation action. Barker's pleadings complain only of *false* accusations by Huang and therefore fail to state a cognizable claim under the "unwanted publicity" variety of the tort of invasion of privacy.

Accordingly, we find Barker's contention that Superior Court erred in granting summary judgment on her claims of invasion of privacy to be without merit.

### b. Intentional Infliction of Emotional Distress

■ Barker next claims that Superior Court erred in granting Huang summary judgment with respect to her claim of intentional infliction of emotional distress. Superior Court found that Barker had

---

**6.** Because not asserted by Barker as error, we will not examine whether Barker's complaint stated a cause of action in any other variety of invasion of privacy.

made no allegations of behavior stating such a cause of action. Barker argues that this holding impermissibly intrudes on the jury's role of determining whether the behavior in question is in fact extreme or outrageous. We need not resolve this question, however, because once again we find a more basic flaw in Barker's view of the law.

In *Grimes v. Carter*, 241 Cal.App.2d 694, 50 Cal.Rptr. 808, 813 (1966), the California District Court of Appeal, in refusing to recognize an independent claim for intentional infliction of emotional distress arising from defamatory statements, explained the relationship between defamation and emotional distress:

It is elementary that, although the gravamen of a defamation action is injury to reputation, libel or slander also visits upon a plaintiff humiliation, mortification and emotional distress. In circumstances where a plaintiff states a case of libel or slander, such personal distress is a matter which may be taken into account in determining the amount of damages to which the plaintiff is entitled, but it does not give rise to an independent cause of action on the theory of a separate tort. To accede to the contentions of the plaintiff in this case would be, in the words of Prosser, a step toward "swallowing up and engulfing the whole law of public defamation." If plaintiff should prevail in her argument it is doubtful whether any litigant hereafter would file a slander or libel action, post an undertaking and prepare to meet substantial defenses, if she could, by simply contending that she was predicating her claim solely on emotional distress, avoid the filing of such bond and render unavailable such substantial defenses as for example, justification by truth.

Other courts have refused to allow a cause of action for intentional infliction of emotional distress where the gravamen of the complaint sounded in defamation. *See Dworkin v. Hustler Magazine, Inc.*, C.D.Cal., 668 F.Supp. 1408, 1420 (1987)

("Without such a rule, virtually any defective defamation claim ... could be revived by pleading it as one for intentional infliction of emotional distress; thus, circumventing the restrictions, including those imposed by the Constitution, on defamation claims," interpreting California, New York, and Wyoming law); *DeMeo v. Goodall*, D.N.H., 640 F.Supp. 1115, 1117 (1986) (cause of action for intentional infliction of emotional distress may not be maintained concurrently with a defamation action, interpreting New Hampshire law); *Wilson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 111 A.D.2d 807, 490 N.Y.S.2d 553, 555 (1985) ("[I]t would be improper to allow plaintiff to evade the specific prerequisites for a libel action by presenting his cause of action in terms of the generalized tort of intentional infliction of emotional distress"); *Flynn v. Higham*, 149 Cal.App.3d 677, 197 Cal.Rptr. 145, 148 (1984) ("to allow an independent cause of action for the intentional infliction of emotional distress based on the same acts which would not support a defamation action, would ... render meaningless any defense of ... privilege").

The tort of intentional infliction of emotional distress is well recognized in Delaware. *Mattern v. Hudson*, Del.Super., 532 A.2d 85 (1987). *See Correa v. Pennsylvania Mfrs. Ass'n Ins. Co.*, D.Del., 618 F.Supp. 915, 928 (1985). However, we hold with the great weight of foreign precedent that an independent action for intentional infliction of emotional distress does not lie where, as here, the gravamen of the complaint sounds in defamation. *Grimes*, 50 Cal.Rptr. at 813; *Dworkin*, 668 F.Supp. at 1420. Accordingly, Barker's claim that Superior Court erred in granting summary judgment of her claim of intentional infliction of emotional distress is without merit.

### III. Barker's Claims Against ICA

 Finally, Barker claims that Superior Court erred in granting summary judgment on her claims against ICA.[7] As the

**7.** Superior Court converted ICA's motion to dismiss for failure to state a claim to a motion for summary judgment in light of Barker's affidavit.

ICA argues on appeal that its motion to dismiss should not have been so converted, since Superior Court did not rely on any facts presented in

Superior Court noted, however, plaintiff's cause of action against ICA is based solely on the fact that ICA provided Huang with an attorney who signed Huang's *Rochen* counterclaim. Barker's affidavit raised no new claims against ICA. Barker has thus made no claim that ICA was a part of any allegedly tortious conduct outside of the judicial context.

The absolute privilege extends to attorneys involved in litigation. *Nix v. Sawyer*, Del.Super., 466 A.2d 407, 413 (1983); *See Hoover v. Van Stone*, D.Del., 540 F.Supp. 1118 (1982); *Tatro v. Esham*, Del.Super., 335 A.2d 623, 626 (1975); Restatement (Second) of Torts § 586. Therefore, ICA was entitled to the protection of the absolute privilege. Neither Barker's complaint nor her affidavit makes out any claims against ICA that are not defeated on their face by the absolute privilege. Accordingly, Barker's claim that Superior Court erred in granting summary judgment on her claims against ICA is without merit.

\* \* \* \* \* \*

Affirmed in part, Reversed in part and Remanded, for further proceedings consistent herewith.

Barker's affidavit in reaching its disposition. ICA's argument may have considerable merit.

However, we do not reach the issue due to ICA's failure to cross-appeal.