# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FRANK C. WHITTINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-08-123 SPL |
| | ) | C.A. No. N23C-08-195 SPL[1] |
| THOMAS WHITTINGTON, | ) | |
| SEAN T. O'KELLY, and | ) | |
| ANDREW H. LIPPSTONE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This 8th day of February 2024, upon consideration of Defendants', Sean T. O'Kelly, Esq. ("O'Kelly"),[2] Andrew H. Lippstone, Esq. ("Lippstone"),[3] and Thomas Whittington, Esq. ("Thomas"),[4] motions to dismiss, Plaintiff's, Frank Whittington ("Frank"), Response,[5] and the parties' January 16, 2024, arguments,[6] it appears to the Court that:

---

[1] C.A. No. N23C-08-195 SPL is consolidated with C.A. No. N23C-08-123 SPL. *See infra* ¶2. Docket items from C.A. No. N23C-08-123 SPL are cited as "D.I.(123) __," and docket items from C.A. No. N23C-08-195 SPL are cited as "D.I.(195) __."

[2] D.I.(123) 10 ("O'Kelly Mot.").

[3] D.I.(195) 7 ("Lippstone Mot.").

[4] D.I.(123) 13 ("Thomas Mot. 123"); D.I.(195) 15 ("Thomas Mot. 195"). The Court refers to the Whittingtons by first name for clarity; no disrespect or familiarity is intended by this reference.

[5] D.I.(123) 14.

[6] D.I.(123) 18.

1. On August 14, 2023, Frank sued Thomas and O'Kelly for defamation based on statements in a letter Thomas sent to Lippstone in an earlier matter that O'Kelly's firm subsequently admitted in a judicial proceeding.[7] A week later, Frank filed a second, nearly identical, defamation case against Thomas and Lippstone premised on the same letter.[8]

2. Defendants moved to dismiss under Superior Court Civil Rule 12.[9] On January 16, 2024, with the agreement of the parties, the Court consolidated the cases under Superior Court Civil Rule 42(a). After hearing argument from the parties, the Court took the motions under advisement.[10]

3. Under Delaware law, a complaint must provide general notice of the claim to withstand dismissal under Rule 12(b)(6).[11] The Court will accept the well pleaded allegations in the complaint and "draw all reasonable factual inferences in favor of the party opposing the motion."[12] A motion to dismiss will be denied if the plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof supported by the complaint.[13] Conversely, a motion to dismiss

---

[7] D.I.(123) 1 ("Compl. 123").

[8] D.I.(195) 1 ("Compl. 195").

[9] *See* O'Kelly Mot., Lippstone Mot., Thomas Mot. 123, Thomas Mot. 195.

[10] D.I.(123) 18.

[11] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

[12] *Id.* (cleaned up).

[13] *Spence v. Funk*, 396 A.2d 967, 968 (Del 1978).

will be granted if the complaint lacks sufficient factual assertions to warrant relief.[14] The Court will not accept unsupported conclusory statements or draw unreasonable inferences favoring the non-moving party.[15]

4. "A statement is defamatory when it 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"[16] To be actionable, "a defamation plaintiff must plead and ultimately prove that the defendant made a statement about the plaintiff that would be understood as defamatory by a reasonable third party and was published, meaning that it was 'communicat[ed] by any method, to one or more persons who can understand the meaning.'"[17]

5. Defamation claims require additional scrutiny at the dismissal stage because dismissal under Rule 12(b)(6) "not only protects against the costs of meritless litigation, but provides assurance to those exercising their First

---

[14] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011) ("[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable conceivability.").

[15] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) (cleaned up).

[16] *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) (quoting Restatement of Torts § 559 (1938)).

[17] *Cousins*, 283 A.3d at 1148 (quoting Dobbs, et. al., *The Law of Torts* § 520, p.176 (2011)).

Amendment rights."[18] The Court will consider the substance of Thomas's letter because it is integral to, and incorporated in, Frank's complaints.[19] And because the context of alleged defamatory speech matters, particularly with respect to the application of certain privileges, Frank's recent litigation will also be considered.

6. On May 25, 2021, Frank retained the law firm of O'Kelly & O'Rourke under an "Agreement for Legal Services" (the "Agreement") to "research causes of action against [Thomas], other family members, and several entities controlled by them in a decades-long dispute over land and money."[20] Defendants O'Kelly and Lippstone, attorneys with the O'Kelly & O'Rourke law firm, performed legal services on Frank's behalf under the Agreement.[21] Lippstone drafted and served upon Thomas a demand for the inspection of certain books and records."[22]

7. Thomas responded to Lippstone's demand.[23] In his response, Thomas offered his impressions of Frank's mental state and his belief that Frank engaged in deceptive and harassing conduct in personal and professional contexts.[24]

---

[18] *ShotSpotter Inc. v. VICE Media, LLC*, 2022 WL 2373418, at *6 (Del. Super. Jun. 30, 2022) (cleaned up).

[19] *See generally, ShotSpotter*, 2022 WL 2373418 at *4.

[20] O'Kelly Mot. at Ex. A, Justice of the Peace Court Notice of Judgment ("JP Court Notice of Judgment") at 2.

[21] *See* JP Court Notice of Judgment at 2-3.

[22] *Id.* at 3.

[23] *See* Letter.

[24] *Id.*

8.     Ultimately, O'Kelly & O'Rourke did not take any formal legal action on Frank's behalf.[25]  Thereafter, Frank refused to pay the legal fees he owed O'Kelly & O'Rourke under the Agreement.[26]

9.     To collect the unpaid legal fees, O'Kelly & O'Rourke filed an action in the Justice of the Peace Court ("JP Court") against Frank for breach of the Agreement.[27]  In the JP Court trial, O'Kelly & O'Rourke offered its demand and Thomas's Letter as evidence of services performed for which payment was owed.

10.     The JP Court found that "[O'Kelly & O'Rourke] performed $13,020 in billed Work for [Frank]," and that Frank "breached the Agreement by refusing to pay for legal services rendered on his behalf," and entered a judgment in favor of O'Kelly & O'Rourke.[28]

11.     Frank then filed the defamation cases presently before this Court. Frank alleges that Thomas defamed him in his response to Lippstone's demand and that O'Kelly and Lippstone defamed him by introducing Thomas's response in the JP Court trial.[29]  Defendants argue a number of bases support dismissal, including

---

[25] JP Court Notice of Judgment at 2-3.

[26] *Id.*

[27] *Id.* at 1.

[28] *Id.* at 3-4.

[29] Compl.(123) at 2; Compl.(195) at 2.

what is referred to as the "absolute litigation privilege" or "judicial proceedings privilege."

12. "Generally, defamation is subject to liability. However, affirmative defenses to a prima facie case exist for statements made in certain contexts where there is a particular public interest in unchilled freedom of expression."[30] Statements made in the context of judicial proceedings are entitled to an "absolute privilege."[31] The doctrine of privilege is "founded [upon] public policy,"[32] and "whether the privilege attaches is a question of law."[33] The privilege derives from:

> a common law rule, long recognized in Delaware, that protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements [were] issued as part of a judicial proceeding and were relevant to a matter at issue in the case. However, statements made outside of the course of judicial proceedings, such as those made during a newspaper interview concerning judicial proceedings, are not accorded the protection of the absolute privilege.[34]

"Traditionally, [the absolute litigation privilege] applied only to statements made during judicial proceedings. However, many jurisdictions 'have recognized the utility in extending the privilege to cover communications made in advance of

---

[30] *Barker v. Huang*, 610 A.2d 1341, 1344 (Del. 1992) 1344.

[31] *Tatro v. Esham,* 335 A.2d 623, 625-26 (Del. Super. Ct. 1975).

[32] *Tatro,* 335 A.2d at 627.

[33] *Walker v. Parson*, 2016 WL 3130093, at *3 (Del. Super. Ct. Apr. 21, 2016).

[34] *Barker*, 610 A.2d at 1345 (cleaned up).

anticipated litigation.'"[35]  If the statement "is reasonably germane to the pending action" or "has some connection to the subject matter of the pending action" then it is relevant to a matter at issue in the case.[36]  "To the extent statements were made prior to, or during judicial proceedings, so long as the statements were made in an effort to address the alleged grievance between the parties, the absolute privilege doctrine applies."[37]

13.  The absolute litigation privilege applies here.  The Court will not, because it need not in the context of this privilege, assess the veracity of the statements contained within Thomas's letter as suggested by Defendants.

14.  O'Kelly and Lippstone offered Thomas's letter as evidence in the JP Court litigation to substantiate work done on Frank's behalf for which Frank was obligated to pay.  The substance of the correspondence – the alleged defamatory remarks – was incidental to the letter's admission but, nonetheless, precisely the type of communication the absolute litigation privilege exists to protect.  O'Kelly and Lippstone offered the document as evidence in fee dispute litigation.  The privilege

[35] *Feenix Payment Systems, LLC v. Michael Blum*, 2022 WL 215026, at *6 (Del. Super. Ct. Jan. 25, 2022) (quoting *Paige Cap. Mgmt., LLC v. Lerner Master Fund, LLC*, 22 A.3d 710, 716-17 (Del. Ch. 2011)).

[36] *Walker*, 2016 WL 3130093 at *4 (cleaned up).

[37] *BRP Hold Ox, LLC v. Chilian*, 2018 WL 5734648, at *5 (Del. Super. Ct. Oct. 31, 2018) (applying the absolute litigation privilege to communications "to address the potential violation of contract claims between the parties.")

applies to this communication, and Frank's defamation claims against O'Kelly and Lippstone must be dismissed.

15.    The privilege applies with equal force to Thomas's response to Lippstone's demand letter.  Absolute privilege extends to "all communications appurtenant" to judicial proceedings, including "conversations between witnesses and counsel."[38]  Statements made "prior to the possible commencement of judicial proceedings" are "deserving of privilege … where the purposes underlying the privilege are satisfied."[39]  The purpose of the absolute privilege is to "facilitate the flow of communication between persons involved in judicial proceedings and, thus, to aid in the complete and full disclosure of facts necessary to a fair adjudication."[40]

16.    Frank retained O'Kelly and O'Rourke to research potential causes of action against Thomas and others.  To this end, Lippstone engaged in preliminary investigation to determine whether any cause of action could be pursued and issued a letter to Thomas demanding information.  Thomas's response included his impressions of Frank as it related to Frank's mental state and prior litigation. Thomas wrote of Frank's "significant litigation," that "Frank is not after information [but rather seeks] to punish his siblings," and his belief that Frank suffers from some

---

[38] *Nix v. Sawyer*, 466 A.2d 407, 410 (Del. Super. Ct. Jul. 21, 1983).

[39] *Tatro*, 335 A.2d at 627.

[40] *Barker*, 610 A.2d at 1345.

form of mental illness.[41]  Thomas concluded by asserting that Frank possessed many, if not all, of the documents Lippstone requested and suggested Lippstone review Frank's files before incurring additional document production expenses.[42]  Thomas's earlier comments about Frank provided context to his response to Lippstone's demand.  The privilege encourages "candid discussions between contentious parties free from the threat of collateral lawsuits based on reputationally based torts such as defamation, libel, or intentional infliction of emotional distress."[43]  The Court finds that the absolute litigation privilege applies to Thomas's correspondence, and Frank's case against Thomas must also be dismissed.

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**.

**IT IS SO ORDERED.**

Sean P. Lugg, Judge

---

[41] Letter at 1-2.

[42] Letter at 2.

[43] *Paige Capital Mgmt., LLC*, 22 A.3d at 722.