# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| PAZUNIAK LAW OFFICE LLC and GEORGE PAZUNIAK, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | C.A. No. N14C-12-259 EMD |
| v. | ) ) | |
| PI-NET INTERNATIONAL, INC. and LAKSHMI ARUNACHALAM, | ) ) ) | |
| Defendants. | ) ) | |
| LAKSHMI ARUNACHALAM, | ) ) | |
| Counterclaim Plaintiff and Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PAZUNIAK LAW OFFICE LLC and GEORGE PAZUNIAK, | ) ) ) | |
| Counterclaim Defendants, | ) ) | |
| and | ) ) | |
| O'KELLY AND ERNST, LLC | ) ) | |
| Third-Party Defendant. | ) ) | |

*Upon Joint Motion to Dismiss All Counterclaims and Third-Party Claims*
*Filed by Defendant Arunachalam*
**GRANTED in Part and DENIED in Part**

Dr. Lakshmi Arunachalam, Menlo Park, California, Defendant *Pro Se*

George Pazuniak, Esquire, Pazuniak Law Office, LLC, Wilmington, Delaware, *Attorney for Plaintiffs/Counterclaim Defendants Pazuniak Law Office LLC and George Pazuniak*

Ryan M. Ernst, Esquire, Sean T. O'Kelly, Esquire, O'Kelly & Ernst, LLC, Wilmington, Delaware, *Attorneys for Third-Party Defendant O'Kelly and Ernst, LLC*.

# I. INTRODUCTION

This is a declaratory judgment action brought by Plaintiffs Pazuniak Law Office LLC and George Pazuniak (collectively, "Pazuniak Law") against Defendants Pi-Net International, Inc. ("Pi-Net") and Lakshmi Arunachalam, Ph.D. Through the Second Amended Complaint, Pazuniak Law seeks a declaration regarding the distribution of certain funds held in an IOLTA trust account. Pazuniak Law also seeks a declaration as to its right to recover costs for providing files to Pi-Net upon the termination of Pazuniak Law's services to Pi-Net and Dr. Arunachalam. Dr. Arunachalam answered the Second Amended Complaint and counterclaimed (the "Answer and Counterclaim") against Pazuniak Law and a new third party, O'Kelly and Ernst, LLC (the "O'Kelly Firm").

On April 13, 2017, Pazuniak Law and the O'Kelly Firm filed the Joint Motion to Dismiss all Counterclaims and Third-Party Claims Filed by Defendant Arunachalam (the "Motion to Dismiss"). Through the Motion to Dismiss, Pazuniak Law and the O'Kelly Firm seek dismissal of all counterclaims and third-party claims asserted by Dr. Arunachalam. Dr. Arunachalam responded to the Motion to Dismiss on May 3, 2017 with Opposition to Plaintiffs' and Third Party O'Kelly & Ernst Joint Motion to Dismiss all Counterclaims and Third-Party Claims Filed by Defendant; _with_ New Claims Per Rules 13(b) and 17; Leave to Amend Counterclaims in the Interest of Justice Per Rules 15, 13, and 17 (the "Opposition").[1] On May 15, 2017, Pazuniak Law and the O'Kelly Firm filed their Reply Brief in Support of Joint Motion to Dismiss all Counterclaims and Third-Party Claims filed by Arunachalam (the "Reply").

Upon review, the Court has determined that no hearing is necessary on the issues and arguments raised in the Motion to Dismiss, the Opposition and the Reply. This is the Court's

---

[1] To the extent that Dr. Arunachalam is seeking to amend the Answer to include additional counterclaims, that request is denied for all the reasons stated in the Court's August 25, 2017 Order.

decision on the Motion to Dismiss.  For the reasons set forth below, the Court **GRANTS in Part and DENIES in Part** the Motion to Dismiss.

## II. RELEVANT FACTS

Pazuniak Law Office LLC is a law firm organized under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware.[2]  George Pazuniak is an attorney licensed to practice law in the State of Delaware, and is the owner of Pazuniak Law Office LLC.[3]  O'Kelly and Ernst, LLC is a law firm organized under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware.[4]

Pi-Net International, Inc., a California corporation, is the assignee of certain patents invented by Lakshmi Arunachalam.[5]  Lakshmi Arunachalam, a California resident, is the principal owner and chief executive officer of Pi-Net and a related entity, WebXchange, Inc. ("WebX").[6]

### A.    PAZUNIAK LAW REPRESENTS PI-NET, WEBX, AND DR. ARUNACHALAM

On January 25, 2012, Pazuniak Law entered into a retainer agreement (the "Retainer Agreement") with Dr. Arunachalam, Pi-Net, and WebX.[7]  Dr. Arunachalam hired Pazuniak Law to litigate a series of WebX and Pi-Net patent infringement cases in the United States District Court for the District of Delaware (the "Delaware District Court").[8]  Pursuant to the Retainer Agreement, recoveries for alleged patent infringement obtained by Pazuniak Law on behalf of

---

[2] Pls.' Second Am. Compl. ¶ 1.
[3] *Id.* ¶ 2.
[4] Def.'s Answer ¶ 5.
[5] Second Am. Compl. ¶ 3.  Dr. Arunachalam has indicated that Pi-Net has been dissolved and no longer exists, but Dr. Arunachalam has not provided the Court with any documentation confirming Pi-Net's corporate dissolution.
[6] *Id.* ¶ 4.
[7] Dr. Arunachalam, Pi-Net and WebX are collectively defined as the "Client" in the Retainer Agreement.  *Id.* ¶ 5; *see also* Def.'s Answer, Ex. A, Retainer Agreement. Exhibit A to the Answer will be cited as "Agreement § __" or "Agreement p. __" if no section is specified.
[8] Agreement § 1.

Pi-Net and Dr. Arunachalam would be placed into Pazuniak Law's IOLTA escrow trust account.[9]  Thereafter, a portion of the recoveries would be retained in escrow and the remainder distributed to Pi-Net, Dr. Arunachalam, and Pazuniak Law in accordance with the terms of the Retainer Agreement's contingent fee schedule.[10]

Over the next two years, Pazuniak Law represented Dr. Arunachalam and Pi-Net in a series of patent infringement cases in the Delaware District Court.[11]  After a series of disagreements, however, Pi-Net and Dr. Arunachalam terminated Pazuniak Law as counsel on August 12, 2014.[12]  After the termination, Pazuniak Law attempted to make a final distribution of the funds in the IOLTA trust account.[13]  Pi-Net and Dr. Arunachalam contested and ultimately rejected Pazuniak Law's accounting of the funds.[14]

Thereafter, Pi-Net and Dr. Arunachalam filed a series of complaints with the Delaware Office of Disciplinary Counsel ("DODC").  The DODC did not find any error in Pazuniak Law's legal representation of Dr. Arunachalam and Pi-Net.  However, DODC advised Pazuniak Law to clear the trust account, even if it required filing an interpleader action.

**B.  PAZUNIAK LAW SEEKS DECLARATORY JUDGMENT AS TO THE FUNDS IN ITS IOLTA TRUST ACCOUNT**

On September 19, 2014, Pazuniak Law filed an action in the Court of Common Pleas seeking a declaratory judgment regarding the distribution of the trust funds (the "Initial Complaint").  The Initial Complaint sought declaratory judgment against Pi-Net only, as Dr. Arunachalam disputed only those expenses related to Pi-Net patent litigations.

---

[9] *Id.* §§ 3(c), 4.
[10] *Id.* § 3(f).
[11] *See e.g., Pi-Net Int'l, Inc. v. JPMorgan Chase & Co.*, C.A. No. 12-282, 2014 WL 1370038, at *1 (D. Del. Apr. 7, 2014).
[12] Second Am. Compl. ¶ 9.
[13] *Id.* ¶¶ 11, 16.
[14] *Id.*

4

On November 14, 2014, Dr. Arunachalam filed a complaint against Pazuniak Law in the U.S. District Court for the Northern District of California (the "California District Court"). The complaint asserted claims for malpractice, breach of fiduciary duty, theft, blackmail, elder abuse, sexual and ethnic harassment, intoxication, and mental instability. By motion of Pazuniak Law, the California District Court transferred the case to the Delaware District Court (the "Delaware District Court Action").[15] The Delaware District Court Action remains active and is pending before the Delaware District Court.[16]

Based on the claims in the Delaware District Court Action, on December 1, 2014, Pazuniak Law filed a First Amended and Supplement Complaint (the "First Amended Complaint"). The First Amended Complaint added claims against both Pi-Net and Dr. Arunachalam for libel and tortuous interference with prospective business opportunities. Pazuniak Law also moved to transfer this action to this Court under 10 *Del. C.* § 1902 ("Section 1902"). The Court of Common Pleas entered an order transferring this action on December 19, 2014. Dr. Arunachalam filed an initial answer to the First Amended Complaint on October 7, 2016.

## C.    LITIGATION IN THIS COURT

Since receiving this civil action, the Court has issued dozens of orders on various issues raised by the parties, few of which addressed or resolved any dispositive issue.[17] Most notably, the Court denied multiple requests by Dr. Arunachalam to substitute herself for Pi-Net or otherwise act on behalf of Pi-Net.[18] The Court explained that Pi-Net, as a corporation, had to be

---

[15] *See e.g., Arunachalam v. Pazuniak*, C.A. No. 14-CV-05051, 2015 WL 1249877, at *1 (N.D. Ca. Mar. 17, 2015).
[16] *See e.g., Arunachalam v. Pazuniak*, C.A. No. 15-259, 2016 WL 748005, at *1 (D. Del. Feb. 24, 2014) (granting in part and denying in part Pazuniak Law's motion to dismiss).
[17] *See* D.I. Nos. 63–70, 77, 87, 104, 124, 136, 143, 146, 156–57, 173, 175, 202, 206–07, 209, 212–16, 233, 235, 250, 267, 269, 272–73.
[18] *See* D.I. Nos. 65, 124, 143.

represented by a licensed attorney and could not appear *pro se*. Despite this explanation, Pi-Net never answered the Initial Complaint or the First Amended Complaint. Consequently, on October 24, 2016, Pazuniak Law filed a motion for entry of default judgment against Pi-Net.[19] On February 21, 2017, the Court entered default judgment against Pi-Net, but reserved judgment as to distribution of the IOLTA funds until the other claims in this case are resolved.[20]

On February 23, 2017, the Court granted Pazuniak Law leave to file a second amended complaint (the "Second Amended Complaint").[21] The Second Amended Complaint, filed on March 8, 2017, dismissed the tort claims against Pi-Net and Dr. Arunachalam and added a new claim for declaratory judgment against Dr. Arunachalam.[22] The Second Amended Complaint now seeks declaratory judgment as to Pi-Net (Count I) and Dr. Arunachalam (Count II) regarding distribution of the trust funds and Pazuniak Law's right to recover costs for providing certain files to Pi-Net.

On April 7, 2017, Dr. Arunachalam filed the Answer and Counterclaim and asserted counterclaims against Pazuniak Law and the O'Kelly Firm as a third-party defendant.[23] Dr. Arunachalam counterclaims against Pazuniak Law for: Malicious Abuse of Process (Count I); Perjury (Count III); Honest Services Fraud (Counts IV); Honest Services Fraud and Elder Financial Abuse (Count V); Indifference to Obstructing Justice (Count VI); and Conspiracy (Count VII). Dr. Arunachalam also counterclaims against Pazuniak Law and the O'Kelly Firm for: Intentional Infliction of Emotional Distress (Count II); Defamation (Count XI); False Light

---

[19] *See* D.I. No. 125.
[20] *See* D.I. No. 216. The Court understands that Pi-Net, WebX and Dr. Arunachalam are collectively the "Client" in the Retainer Agreement. Therefore, the Court felt it premature to make any further determinations with respect to Pi-Net until all the parties' rights with respect to the Retainer Agreement had been resolved.
[21] *See* D.I. No. 213.
[22] *See* D.I. No. 246
[23] *See* D.I. No. 253.

(Count XII); and Misappropriation of Client Funds and IOLTA Account Funds and Breach of Contract (Count XIII).[24]

Now, through the Motion to Dismiss, Pazuniak Law and the O'Kelly Firm move to dismiss the ten counterclaims.

### III. PARTIES' CONTENTIONS

Pazuniak Law and the O'Kelly Firm move to dismiss the counterclaims pursuant to Rule 12(b)(6) of the Superior Court Civil Rules ("Civil Rule 12(b)(6)"). Pazuniak Law and the O'Kelly Firm argue that Dr. Arunachalam does not plead facts to support the counterclaims against either party, or demonstrate that the counterclaims are cognizable under the facts of this case.

Dr. Arunachalam claims that she alleges conduct by Pazuniak Law and the O'Kelly Firm, in prior and current legal proceedings, that gives rise to and supports the counterclaims. Dr. Arunachalam also contends that the counterclaims are legally cognizable claims based on Pazuniak Law and the O'Kelly Firm's representations and actions.

### IV. STANDARD OF REVIEW

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to

---

[24] There are no Counts VIII, IX, or X in the Answer. Dr. Arunachalam sought to amend the Answer to include additional counterclaims, but the Court denied that relief by Order dated August 25, 2017.

recover under any reasonably conceivable set of circumstances.[25]  However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[26]

Here, because Dr. Arunachalam is proceeding *pro se*, the Court must "liberally construe" the pleadings filed by Dr. Arunachalam, meaning that the Court must hold the pleadings, however, unartfully pleaded, "to less stringent standards than formal pleadings drafted by lawyers."[27]

## V. DISCUSSION

### A.    COUNT I: MALICIOUS ABUSE OF PROCESS AGAINST PAZUNIAK LAW

Dr. Arunachalam's malicious abuse of process claim touches upon two separate causes of action: malicious prosecution and abuse of process.  The Court must liberally construe Count I and so it will address each cause of action in turn.

### i.    *Malicious Prosecution*

To sustain a malicious prosecution claim, the aggrieved party must establish: (i) the institution of civil proceedings; (ii) without cause; (iii) with malice; (iv) termination of the proceedings in the aggrieved party's favor; and (v) damages which were inflicted upon the aggrieved party by seizure of property or other special injury.[28]  Dr. Arunachalam does not plead facts to sustain a malicious prosecution claim.  Dr. Arunachalam does not allege that Pazuniak Law initiated a prior proceeding against her, much less that that proceeding was terminated in Dr. Arunachalam's favor.  Dr. Arunachalam briefly mentions the Court of Common Pleas action;[29] however, transferring a case from the Court of Common Pleas to this Court under

---

[25] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[26] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[27]*Arunachalam v. Pazuniak*, C.A. No. 15-259, 2016 WL 748005, at *3 (D. Del. Feb. 24, 2016) (quoting *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)).
[28] *Carr v. Dewey Beach*, 730 F.Supp. 591, 598 (Del. 1990).
[29] Countercl. p. 132.

Section 1902 does not constitute "termination of the proceedings in the aggrieved party's favor" for purposes of a malicious prosecution claim. Instead, this civil action was transferred under a Delaware statute from the Court of Common Pleas to this Court.

### ii. *Abuse of Process*

To redress this "procedural pitfall" of a malicious prosecution claim—that an aggrieved litigant cannot bring an action until a prior action terminated in his favor—the tort of abuse of process was created.[30] Abuse of process concerns "perversion[s] of the process after it has been issued."[31] The elements of abuse of process are: (i) an ulterior purpose; and (ii) a willful act in the use of process not proper in the regular conduct of the proceeding.[32] Delaware courts have made clear, however, that these two elements require "some definite act or threat not authorized by the process . . . Merely carrying out the process to its authorized conclusions, even though with bad intentions, will not result in liability."[33] In other words:

> Some form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, must be shown, such as obtaining the surrender of property or the payment of money by the use of the process as a threat or club. In other words, a form of extortion is required."[34]

The pleaded facts, even when viewed in a light most favorable to Dr. Arunachalam, do not support an abuse of process claim. Count I states that Pazuniak Law engaged in abuse of process by willfully and intentionally failing to attach and provide a copy of the Retainer Agreement in the Initial Complaint and First Amended Complaint.[35] Count I also refers to Pazuniak Law's alleged deceit in "adding the Trust Agreement into his 1st Amended

---

[30] *Toll Bros. v. Gen. Acc. Ins. Co.,* C.A. No. 98C-08-203, 1999 WL 744426, at *5 (Del. Super. Aug. 4, 1999).
[31] *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.,* C.A. No. 5886, 2013 WL 3934992, at *23 (Del. Ch. Jul. 24, 2013).
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] Def.'s. Countercl. p. 132.

9

Complaint."[36] On a whole, the Answer and Counterclaim make allegations of bad faith against

Pazuniak Law in initiating the action based on Pazuniak Law's misinterpretation of the Retainer

Agreement.[37] However, these facts, even if true, do not support a finding that Pazuniak Law

acted with the required malice, improper motive, or wanton disregard for the rights of Dr.

Arunachalam. The case law makes clear that an abuse of process claim contemplates some overt

act done *in addition* to the initiating of a lawsuit.[38] The mere filing of a lawsuit, even if done

with an improper motive or based upon an unjustified reading of an agreement, is insufficient to

sustain a claim for abuse of process.[39] Dr. Arunachalam complains of actions taken during the

litigation with respect to attachments to pleadings. Such claims do not rise to the level of a

cognizable claim for abuse of process.

Therefore, whether Dr. Arunachalam pleads a malicious prosecution or an abuse of

process claim, the Court will dismiss Count I against Pazuniak Law.

**B.      COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST PAZUNIAK LAW AND THE O'KELLY FIRM**

Dr. Arunachalam next brings a counterclaim for intentional infliction of emotional

distress ("IIED") against Pazuniak Law and the O'Kelly Firm.

In Delaware, an IIED claim is defined by Section 46 of the Restatement (Second) of

Torts.[40] An IIED claim arises when "[o]ne who by extreme and outrageous conduct intentionally

---

[36] *Id.*

[37] *Id.* p. 41–45.

[38] *Korokti v. Hiller & Arban, LLC*, C.A. No. N15C-07-164, 2016 WL 3637382, at * 3 (Del. Super. Jul. 1, 2016) (granting defendants' motion to dismiss abuse of process claim under 12(b)(6) based on plaintiffs' allegations that defendants filed a "retaliatory and patently frivolous" litigation because the claim did not allege anything more than the initiation of a lawsuit).

[39] *Preferred Inv. Servs.*, C.A. No. 5886, 2013 WL 3934992, at *23 ("T&H's additional arguments regarding PISI's intention to drive T&H out of business do not support its claim for abuse of process. Unlike a claim for malicious prosecution, the fact that PISI allegedly harbored a hope when it initiated this action against T&H that T&H might fail . . . is not relevant to an abuse of process claim.").

[40] *See e.g., Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. 1987).

or recklessly causes severe emotion distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, such bodily harm."[41] Courts interpret extreme and outrageous conduct to be that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community."[42]

To constitute extreme and outrageous conduct, it is not enough that the defendant has acted with tortious or criminal intent or even that his conduct involved malice sufficient to sustain a claim for another tort.[43] Instead, courts have found liability "only where the conduct has been so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[44] Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is a determination for the court in the first instance.[45] However, if reasonable minds may differ on this determination, the question is left for the jury.[46]

Count II pleads IIED based on Pazuniak Law's conduct in transferring the case from the Court of Common Pleas to this Court. Dr. Arunachalam points to Pazuniak Law's "arrogantly lawless and outrageous propounding of lies uttered to the lower court that the agreed upon escrow account was below $50,000; and to the Superior Court that the agreed upon escrow account was above $50,000" to support the claim.[47] Furthermore, Dr. Arunachalam alleges that this conduct compromised "the integrity of the courts, and confidence of the public's trust and

---

[41] *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 816 (Del. Super. 2009).
[42] *Thomas v. Harford Mut. Ins. Co.*, C.A. No. 01C-01-046, 2004 WL 1102362, at *3 (Del. Super. Apr. 7, 2004).
[43] Restatement (Second) of Torts § 46 cmt. d.
[44] *Id.*
[45] *Hunt v. State*, 69 A.3d 360, 367 (Del. 2013) (quoting Restatement (Second) of Torts § 46(h)).
[46] *Id.* (quoting Restatement (Second) of Torts § 46(h)).
[47] Countercl. p. 135–36.

11

reasonable expectation of a minimum standard of lawfulness."[48]  Dr. Arunachalam does not

plead any facts to assert IIED against the O'Kelly Firm.

Pazuniak Law may have erred when filing this action in the Court of Common Pleas.

Upon the filing of the First Amended Complaint, it became necessary for Pazuniak Law to move

this civil action from the Court of Common Pleas to this Court because the Court of Common

Pleas no longer had subject matter jurisdiction.  Pazuniak Law remedied that by transferring the

civil action to this Court under Section 1902.  Pazuniak Law's conduct was not impermissible or

otherwise fraudulent; in fact, it is expressly contemplated by Section 1902.[49]  The Court does not

find that instituting civil proceedings in the first instance, when instructed by the DODC to do so,

or later transferring the civil action to this Court under Section 1902 constitutes extreme or

outrageous conduct which would warrant civil liability.  No reasonable mind could disagree.

Therefore, the Court will dismiss Count II against Pazuniak Law and the O'Kelly Firm.

## C.     COUNTS III, VI, AND VII: PERJURY, OBSTRUCTION OF JUSTICE, AND CONSPIRACY AGAINST PAZUNIAK LAW

Dr. Arunachalam next counterclaims against Pazuniak Law for perjury, obstruction of

justice, and conspiracy.  Because these claims and the facts in support thereof are interrelated,

the Court will address the claims together in turn.

### i.   Perjury

Perjury is a criminal offense statutorily defined in 11 *Del. C.* § 1221.  Generally, a person

is guilty of perjury when the person swears falsely under oath.[50]  A person "swears falsely" when

the person "intentionally makes a false statement or affirms the truth of a false statement

---

[48] *Id.*

[49] *See Carney v. Qualls*, 514 A.2d 1126, 1128 (Del. Super. 1986) (explaining that 10 *Del. C.* § 1902 is "remedial in nature and designed to prevent [a] case from being totally precluded because [the] case was brought in the wrong court").

[50] *See* 11 *Del. C.* § 1221–23.

previously made, knowing it to be false or not believing it to be true, while giving testimony or under oath in a written instrument" or in certain types of declarations.[51]

Dr. Arunachalam's perjury counterclaim is difficult to discern. It appears Dr. Arunachalam is arguing that Pazuniak Law committed perjury by altering a material court document, which in this case appears to be the Retainer Agreement and other "court filings."[52] Dr. Arunachalam does not explain how Pazuniak Law altered the Retainer Agreement or any other documents presently before the Court. Even if she did, Dr. Arunachalam does not plead any false statement made by Pazuniak Law while giving testimony under oath or in a declaration. Neither the Retainer Agreement nor any pleading or document produced by Pazuniak Law was signed or submitted by Pazuniak Law under oath.

### ii. *Obstruction of Justice*

Obstruction of justice is defined under 18 *U.S.C.* § 1501–21 and encompasses many different criminal offenses. For example, an individual may be guilty of obstruction of justice if the individual obstructs a court order or state or local law enforcement or if the individual tampers with or retaliates against a witness, victim, or informant.[53]

Dr. Arunachalam's obstruction of justice claim is again difficult to decipher. Dr. Arunachalam alleges that Pazuniak Law obstructed justice by "trick[ing] the Superior Court into changing the terms of [Pazuniak Law's] own contract retaining agreement" and by placing before the Court "knowingly false assertions."[54] These allegations lack any factual support. Dr. Arunachalam does not identify which "false statements" are presently before the Court, how those statements are false, or why those statements give rise to an obstruction of justice claim. In

---

[51] 11 *Del. C.* § 1224.
[52] Countercl. p. 137–38.
[53] 18 *U.S.C.* §§ 1509–10, 1512–13.
[54] Countercl. p. 142.

addition, despite litigating numerous issues in this case, the Court has not yet substantively ruled upon any issues related to the Retainer Agreement. Accordingly, there is no basis for Dr. Arunachalam's claim that the Court altered the terms of the Retainer Agreement in favor of Pazuniak Law.

### iii. *Conspiracy*

Conspiracy is a criminal offense defined in 11 *Del. C.* § 521. Generally, a person is guilty of conspiracy when, "intending that another person engage in conduct constituting" a misdemeanor or felony, "the person, solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in conduct which would constitute" the misdemeanor or felony.[55]

There are no facts in Count VII to support a conspiracy claim. Dr. Arunachalam's entire basis for Count VII appears to be Pazuniak Law's unlawful retention of the trust funds for four years in violation of the Retainer Agreement.[56] Dr. Arunachalam accuses Pazuniak Law of laundering the IOLTA account funds, and asks the Court to issue a "bench warrant for plaintiff."[57] There is no accusation that Pazuniak Law solicited another person to engage in criminal conduct or any other facts that remotely support the criminal offense of conspiracy.

As a final point, aside from the ambiguity of the foregoing claims, Dr. Arunachalam does not articulate how, under Delaware law, she is able to assert a criminal offense of perjury, obstruction of justice, or conspiracy against Pazuniak Law in a civil proceeding. The claims are simply not actionable as civil claims under the facts of this civil action and as alleged by Dr. Arunachalam. Therefore, the Court will dismiss Counts III, VI, and VII against Pazuniak Law.

---

[55] 11 *Del. C.* §§ 501–03.
[56] Countercl. p. 144.
[57] *Id.* p. 145.

14

**D.** **COUNT IV: HONEST SERVICES FRAUD AGAINST PAZUNIAK LAW**

Dr. Arunachalam next brings an honest services fraud counterclaim against Pazuniak Law.

Honest services fraud is a criminal offense as defined in 18 *U.S.C.* § 1346 ("Section 1346")—the federal mail and wire fraud statute. Section 1346 defines honest services fraud as "a scheme or artifice to deprive another of the intangible right to honest services."[58] The statute has been applied by federal prosecutors in cases of public corruption as well as in cases in which private individuals breached a fiduciary duty to another.[59] In order to avoid finding Section 1346 to be unconstitutionally vague, the Supreme Court of the United States narrowly interpreted the statute to cover only fraudulent schemes that deprive another of honest services through bribes or kickbacks supplied by a third party who has not been deceived.[60]

Count IV pleads that Pazuniak Law "breached his fiduciary trust by a pattern of deceit and corruption designed to lawfully retain monies held in trust."[61] Count IV also pleads that Pazuniak Law likely laundered or spent the money in the trust account in further breach of Pazuniak Law's fiduciary duty to distribute the funds.[62] Dr. Arunachalam does not plead that Pazuniak Law received any bribes or kickbacks by a third party that deprived her of Pazuniak Law's honest services. Dr. Arunachalam simply disputes Pazuniak Law's handling of the IOLTA trust account, an allegation which is more appropriately addressed through her breach of contract claim. Accordingly, a criminal action for honest services fraud is not cognizable as a civil claim under the facts of this civil action.

---

[58] 18 *U.S.C.* § 1346.
[59] *See Skilling v. United State*, 561 U.S. 358, 360 (2010).
[60] *See id*. at 408–09.
[61] Countercl. p. 139.
[62] *Id.*

The facts alleged in support of Count IV could potentially sound a claim for breach of fiduciary duty as opposed to honest services fraud.[63] However, it is well-settled under Delaware law that breach of fiduciary duty is an equitable cause of action over which the Court of Chancery has exclusive jurisdiction.[64] Accordingly, Dr. Arunachalam cannot bring a claim for breach of fiduciary duty in this Court.

Therefore, whether interpreting Count IV as a claim for honest services fraud or breach of fiduciary duty, the Court will dismiss Count IV against Pazuniak Law.

E.    COUNT V: ELDER FINANCIAL ABUSE AGAINST PAZUNIAK LAW

Dr. Arunachalam next pleads an alternative claim for honest services fraud for elder financial abuse. To the extent that Dr. Arunachalam is again asserting a claim for honest services fraud, that claim is dismissed for the reasons stated above. The Court focuses this analysis on the claim for elder financial abuse.

Delaware law provides a statutory remedy for elder abuse under 6 *Del. C.* § 2583. The statute provides a private right of action only to elderly victims of consumer fraud.[65] An elderly person is defined as a "person who is 65 years of age or older."[66]

Count V alleges that Pazuniak Law committed elder financial abuse by depriving Dr. Arunachalam of entrusted monies in the IOLTA trust account and altering court documents.[67]

---

[63] *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, C.A. No. 3874, 2009 WL 2501542, at *4 (Del. Ch. Aug. 5, 2009) (explaining that to maintain a breach of fiduciary duty claim, the client must prove the attorney-client relationship was fiduciary in nature, meaning the attorney was acting in a capacity like a trustee or corporate manager, such as in the case of client trust accounts).

[64] *Rich Realty, Inc. v. Potter Anderson & Corroon LLP*, C.A. No. 09C-12-273, 2011 WL 743400 (Del. Super. Feb. 21, 2011) (dismissing plaintiffs' breach of fiduciary duty claim against its attorney pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction).

[65] 6 *Del. C.* § 2583.

[66] 6 *Del. C.* § 2580(a).

[67] Countercl. p. 140–41.

Count V also alleges that Pazuniak Law is "of the low character that preys on senior citizens professionally to take whatever they can without remorse or concern."[68]

Count V lacks any facts to support an elder abuse claim. Dr. Arunachalam does not explain how Pazuniak Law's conduct amounted to consumer fraud, or even whether Dr. Arunachalam paid for Pazuniak Law's legal services in the first instance. In addition, Dr. Arunachalam does not plead her date of birth to prove she was "65 years of age or older" at the time of the alleged acts. Instead, Dr. Arunachalam focuses Count V on Pazuniak Law's purported mishandling of the funds in the IOLTA account. Even if the Court assumes that Dr. Arunachalam was 65 years of age or older at the time of Pazuniak Law's purported conduct, the remaining allegations do not state a valid elder abuse claim upon which relief can be granted. Moreover, Dr. Arunachalam's breach of contract claim more properly addresses issues relating to the Retainer Account and the funds held in the IOLTA account.

Therefore, the Court will dismiss Count V against Pazuniak Law.

**F.     COUNTS XI AND XII: DEFAMATION AND FALSE LIGHT AGAINST PAZUNIAK LAW AND THE O'KELLY FIRM**

Dr. Arunachalam next counterclaims against Pazuniak Law and the O'Kelly Firm for defamation and false light. Because these causes of action are interrelated, the Court will address these causes of action together in turn.

### i.     *Defamation*

Defamation is generally understood as a false publication calculated to bring one into disrepute.[69] To sustain a defamation claim, a plaintiff must plead: (i) a defamatory

---

[68] *Id.* p. 141.
[69] *Walker v. Parson*, C.A. No. S16C-04-006, 2016 WL 3130093, at *3–4 (Del. Super. Apr. 21, 2016).

communication; (ii) publication; (iii) [that] the communication refers to the plaintiff; (iv) a third party's understanding of the communication's defamatory character; and (v) injury.[70]

Affirmative defenses exist for defamatory statements made in certain contexts where "there is a particular public interest in unchilled freedom of expression.[71] One such affirmative defense is the "absolute privilege," which protects the statements of judges, parties, witnesses, and attorneys from actions for defamation.[72] To assert the privilege, a defendant must show that: (i) the statements are offered in the course of the judicial proceeding; and (ii) the alleged defamation is relevant to a matter at issue in the case.[73] Whether the privilege attaches is a question of law.[74]

Dr. Arunachalam's defamation claim is scantily pleaded. Dr. Arunachalam alleges that Pazuniak Law and the O'Kelly Firm "maliciously, frivolously, and without a legitimate legal or factual basis, cause or reason" commenced lawsuits against Dr. Arunachalam with the "intent and purpose to injure and destroy [her] good name and reputation and her patents."[75] Dr. Arunachalam alleges that Pazuniak Law defamed her through the frivolous "four count Complaint" wherein Pazuniak Law brought claims for defamation against Dr. Arunachalam.[76] Dr. Arunachalam does not identify which statements were purportedly defamatory. Dr. Arunachalam also alleges that the O'Kelly Firm made defamatory statements "in subsequent Court filings," but does not identify particular court documents or specific defamatory statements.[77]

---

[70] *Univ. Capital Mgmt. v. Micco World, Inc.*, C.A. No. N10C-07-039, 2012 WL 1413598, at *4 (Del. Super. Feb. 1, 2012).
[71] *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992).
[72] *Id.*
[73] *Id.*
[74] *Walker*, C.A. No. S16C-04-006, 2016 WL 3130093, at *3–4.
[75] Countercl. p. 152.
[76] *Id.* p. 151.
[77] *Id.* p. 152.

Even if Dr. Arunachalam identified the specific defamatory statements, the defamation claim is barred as a matter of law by the doctrine of absolute privilege. First, the purported defamatory statements were made in the course of judicial proceedings. As it pertains to Pazuniak Law, the only medium in which Dr. Arunachalam alleges that Pazuniak Law published the alleged defamatory statements are in the "four count Complaint," *i.e.,* the First Amended Complaint. As it pertains to the O'Kelly Firm, Dr. Arunachalam alleges that the O'Kelly Firm published the defamatory statements in "subsequent Court filings." Dr. Arunachalam does not allege that Pazuniak Law or the O'Kelly firm published defamatory statements outside of litigation or court documents.

Second, while Dr. Arunachalam does not identify specific defamatory statements, the information contained in the pleadings and documents filed in this case have been relevant to the subject matter of this litigation. The First Amended Complaint initially included a claim for defamation against Dr. Arunachalam, and the information pleaded was in support of that defamation claim. Since that time, Pazuniak Law has filed a Second Amended Complaint and refocused its litigation on the proper distribution of the IOLTA trust funds. The "subsequent filings" in this Court have all been relevant and related to the declaratory judgment causes of action. Therefore, the defamation claim is barred by the doctrine of absolute privilege.

### ii. *False Light*

Delaware courts have extended the doctrine of absolute privilege to all claims involving injury to reputation.[78] In *Hoover v. Van Stone*[79]*,* the Delaware District Court applied the doctrine

---

[78] *Hoover v. Van Stone*, 540 F.Supp. 1118, 1124 (D. Del. 1982); *Adams v. Gelman*, C.A. No. N15C-06-030, 2016 WL 373738, at *3 (Del. Super. Jan. 28, 2016).
[79] 540 F.Supp. 1118 (D. Del. 1982).

19

of absolute privilege to the defendants' defamation counterclaim and extended it to the defendants' three other counterclaims.[80]  The Delaware District Court reasoned as follows:

> Defendants argue that even if the absolute privilege bars an action for defamation, it does not preclude the prosecution of the three other counts contained in the counterclaim. These counts, however, are all predicated on the very same acts providing the basis for the defamation claim. Application of the absolute privilege solely to the defamation count, accordingly, would be an empty gesture indeed, if, because of artful pleading, the plaintiff could still be forced to defend itself against the same conduct regarded as defamatory. Maintenance of these kindred causes of action, moreover, would equally restrain the ability of judges, parties, counsel and witnesses to speak and write freely during the course of judicial proceedings.[81]

Dr. Arunachalam's false light claim is virtually identical to the defamation claim.  Dr. Arunachalam again asserts that Pazuniak Law and the O'Kelly Firm published false statements in this lawsuit and "subsequent Court filings."[82]  Dr. Arunachalam again fails to identify particular court filings or specific false statements.  The false light claim does not provide any additional information that would distinguish it from the defamation claim.  As such, the false light claim is similarly barred by the doctrine of absolute privilege.

Therefore, the Court will dismiss Counts XI and XII against Pazuniak Law and the O'Kelly Firm.

## G. COUNT XIII: MISAPPROPRIATION OF CLIENT FUNDS AND BREACH OF CONTRACT AGAINST PAZUNIAK LAW AND THE O'KELLY FIRM

Lastly, Dr. Arunachalam counterclaims against Pazuniak Law and the O'Kelly Firm for misappropriation of client funds and breach of contract.  Misappropriation and breach of contract are two distinct claims, and the Court will analyze each in turn below.

---

[80] *Hoover*, 540 F.Supp. at 1124.
[81] *Id.*
[82] Countercl. p. 154.

20

### i. *Misappropriation of Client Funds*

A claim for misappropriation of client funds is normally brought through a complaint filed with the DODC for violation of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC").[83]  Under DLRPC Rule 1.15(a), a lawyer must identify and appropriately safeguard client funds.[84]  Moreover, DLRPC Rule 1.15(f) provides that a lawyer holding certain client funds must act reasonably to place funds into an interest-bearing account for the benefit of the client.[85]

Dr. Arunachalam alleges that Pazuniak Law and the O'Kelly Firm misappropriated and mingled Dr. Arunachalam's money with their own.[86]  Dr. Arunachalam also makes unsubstantiated allegations throughout the Answer and Counterclaim that Pazuniak Law has laundered the money in the IOLTA account.[87]

The foregoing allegations are belied by the facts of this case.  This is a civil action seeking declaratory relief regarding the distribution of certain funds being *lawfully held* in Pazuniak Law's IOLTA trust account and according to Section 3(c) of the Retainer Agreement.  Pazuniak Law attempted to distribute the funds in the account, but Dr. Arunachalam and Pi-Net contested Pazuniak Law's accounting.  Pazuniak Law is now awaiting judicial determination on the very narrow issue of the proper distribution of those funds, as the DODC instructed it to do.  This course of conduct, in the absence of specific facts to the contrary, does not amount to misappropriation of funds or alike.

---

[83] *See e.g., In re Carey*, 809 A.2d 563 (Del. 2002).
[84] DLRPC 1.15(a).
[85] DLRPC 1.15(f).
[86] Countercl. p. 156.
[87] *See id.* p. 139, 145.

Dr. Arunachalam also cannot assert a misappropriation claim against the O'Kelly Firm. The Court is aware that the O'Kelly Firm represented Dr. Arunachalam in certain Pi-Net patent litigations. The Court is also aware that the O'Kelly Firm is a defendant in the Delaware District Court Action. However, as it relates to this case, the O'Kelly Firm has no control over the IOLTA trust account at issue. Pazuniak Law has exclusive control over the IOLTA account and is the sole entity responsible for maintaining and distributing the funds in the account. Consequently, even if this Court was the proper adjudicative body for hearing this claim, the claim is not cognizable under the facts of this case.

### ii. Breach of Contract

Count XIII also alleges that Pazuniak Law and the O'Kelly Firm breached the Retainer Agreement by refusing to pay Dr. Arunachalam the money in the account.[88] Dr. Arunachalam contends Pazuniak Law owes her:

> at least $150,000 she advanced for litigation expenses and what is in the IOLTA account plus interest for over three years, plus the monies she has paid to patent lawyers for patent office work and USPTO fees totaling over $2M that Pazuniak Law agreed to pay per the Retainer Agreement plus interest for over four years.[89]

While not asserted specifically in Count XII, the Answer and Counterclaim also make reference to improper accounting and improper distribution of the funds.[90]

In drawing all reasonable inferences in favor of Dr. Arunachalam, these allegations, if liberally construed and accepted as true, support a claim that Pazuniak Law breached the Retainer Agreement. Section 2 of the Retainer Agreement sets forth Pazuniak Law's contingent fee schedule.[91] Section 3(c) and 3(f) of the Retainer Agreement then provide that:

---

[88] *Id.* p. 156

[89] *Id.* p. 156–57.

[90] *See id.* p. 4, 11, 28.

[91] Agreement § 2.

> c. Client and Counsel intend to settle at least some cases early, with a major portion being distributed in accordance with Section 2, and a to-be-agreed upon portion of the settlement funds being placed in Counsel's IOLTA Trust account to cover future litigation costs.
>
>  f Upon termination of this Agreement or termination [sic] the attorney-client relationship between Counsel and Client, Client and Counsel shall be refunded all sums remaining in Counsel's IOLTA Trust account in accordance with the distribution provided in this Agreement."[92]

If Pazuniak Law improperly distributed the funds or provided an improper accounting to Dr. Arunachalam in violation of Sections 2 and 3 of the Retainer Agreement, Pazuniak Law could be found to have breached the Retainer Agreement. At this early stage in the proceeding, the Court does not have before it sufficient facts to resolve this question. Therefore, the Court will permit Dr. Arunachalam to proceed with this claim against Pazuniak Law.

However, Dr. Arunachalam cannot proceed with a breach of contract claim against the O'Kelly Firm. The O'Kelly Firm is not a party to the Retainer Agreement at issue in this civil action. The Retainer Agreement is between Pazuniak Law and WebX, Pi-Net, and Dr. Arunachalam.[93] Dr. Arunachalam has not demonstrated that there is any separate agreement between her and the O'Kelly firm related to legal representation, client funds, or any other matter related to this civil action.

Therefore, to the extent that Count XIII asserts a misappropriation claim, the Court will dismiss that claim against Pazuniak Law and the O'Kelly Firm. However, to the extent that Count XIII asserts a breach of contract claim, the Court will dismiss that claim against the O'Kelly Firm but will allow it to proceed against Pazuniak Law.

---

[92] *Id.* § 3(f).
[93] *Id.* p. 1.

## V. CONCLUSION

The Court will **GRANT in Part and DENY in Part** Pazuniak Law and the O'Kelly

Firm's Joint Motion to Dismiss all Counterclaims and Third-Party Claims Filed by Defendant

Arunachalam. The only remaining counterclaim is for Breach of Contract (Count XIII) against

Pazuniak Law. There are no remaining counterclaims against the O'Kelly Firm. Accordingly,

the O'Kelly Firm is dismissed as a third-party to this action.

Dated: August 25, 2017
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge