# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ENTERTAINMENT DATA ORACLE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. N22C-06-133 PRW CCLD |
| ISPOT.TV, INC., | ) ) | |
| Defendant. | ) | |

Submitted: November 22, 2022
Decided: December 7, 2022

*Upon Defendant iSpot.tv, Inc.'s Motion to Dismiss or Stay,*
**DENIED in part, GRANTED in part.**

## MEMORANDUM OPINION AND ORDER

Garrett B. Moritz, Esquire, Elizabeth M. Taylor, Esquire, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware, Demian A. Ordway, Esquire, Timothy W. Grinsell, Esquire, Victoria Roeck, Esquire, HOLWELL SHUSTER & GOLDBERG LLP, New York, New York, *Attorneys for Plaintiff Entertainment Data Oracle, Inc.*

Seth A. Niederman, Esquire, FOX ROTHSCHILD LLP, Wilmington, Delaware, Gavin W. Skok, Esquire, FOX ROTHSCHILD LLP, Seattle, Washington, *Attorneys for Defendant iSpot.tv, Inc.*

**WALLACE, J.**

iSpot.tv, Inc. ("iSpot") and Entertainment Data Oracle, Inc. ("EDO") are both in the entertainment advertising analytics business. iSpot, the senior player with a focus on television; and EDO, the start-up with a focus on movies. EDO became a customer and subscriber to iSpot's august television analytics database and related services on the understanding it was purportedly to be used for EDO's movie business. After the expiration of three successive customer and licensing agreements, EDO launched a new television analytics platform in direct competition with iSpot. While EDO was in the middle of negotiating new investments in its new venture, iSpot filed suit in California alleging misappropriation of trade secrets, copyright violation, and breach of contract. In turn, EDO filed suit here, alleging tortious interference in a prospective business relationship by "fil[ing] baseless claims against EDO" in California "with the intent to disrupt EDO's expected equity infusion from [an investor]."[1]

iSpot has moved now to stay or dismiss this action incanting *McWane*,[2] or alternatively, to dismiss the action under the judicial privilege doctrine. Because the viability of EDO's claim here is all but dependent on the California Action, the Court will **STAY** this action in favor of the ongoing California suit.

---

[1] Compl. ¶ 83, June 17, 2022 (D.I. 1); *see* D.I. 13, Ex. A, First Amended Complaint, *iSpot.tv, Inc. v. Nadezhda Teyfukova and Entertainment Data Oracle, Inc.*, 2:21-CV-06815-MEMF-MAR (C.D. Cal. Mar. 7, 2022) (hereinafter the "California Action").

[2] *See McWane Cast Iron Pipe Corp. v. McDowell–Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970)).

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. THE PARTIES

iSpot is a Delaware corporation with its principal place of business in Bellevue, Washington.[3] EDO is a Delaware corporation with its principal place of business in New York, New York.[4]

## B. FACTUAL BACKGROUND

This dispute arises from Defendant iSpot's alleged tortious interference with EDO's business relations with Shamrock Capital Advisors, LLC ("Shamrock"). According to EDO, it was preparing to consummate an $80 million investment deal with Shamrock in March 2022 when iSpot hit EDO with a sham suit in California.[5] iSpot's California complaint alleges EDO used iSpot's data and intellectual property impermissibly.[6]

In 2014, EDO and iSpot entered into a licensing agreement where EDO licensed access to iSpot's database of TV ads to develop EDO's own predictive

---

[3]  *Id.* ¶ 13.

[4]  *Id.* ¶ 12.

[5]  *Id.* ¶¶ 2-3.  iSpot filed suit against EDO and Nadya Teyfukova on March 7, 2022, in the United States District Court for the Central District of California seeking damages and injunctive relief for (1) federal trade secrets misappropriation; (2) state trade secrets misappropriation; (3) federal copyright violation; and (4) state breach of contract (against EDO only).  California Action ¶¶ 58-88.

[6]  Compl. ¶¶ 6-7.

product.[7]  EDO and iSpot entered into three separate contracts from 2014 through 2018 granting EDO a license to use iSpot's database.[8]  iSpot says it allowed EDO to become a customer based on the representation that EDO's business was movie box office sales analysis and promises by EDO that it would not misuse iSpot's data to create its own predictive analytics service.[9]  The California complaint alleges EDO breached that agreement when EDO used iSpot's data to develop its own competing products.[10]

In response, EDO acknowledges the contracts it entered with iSpot prohibited EDO from using iSpot's data to build a TV monitoring service.[11]  EDO says its last contract with iSpot terminated in March 2018.[12]  And months later, EDO announced the launch of its own advertising analytics product, EnGage.[13]  EDO insists it did not use iSpot's data to contribute to any of its products and the EnGage product offers inherently different information than what is available in iSpot's database.[14]

---

[7]  California Action ¶ 3.

[8]  *Id.* ¶ 23.

[9]  *Id.* ¶ 3.

[10]  *Id.* ¶ 7.

[11]  D.I. 13, Ex. B Motion to Dismiss, *iSpot.tv, Inc. v. Nadezhda Teyfukova and Entertainment Data Oracle, Inc.*, 2:21-CV-06815-MEMF-MAR (C.D. Cal. Apr. 15, 2022) (hereinafter the "California Motion to Dismiss") at 3.

[12]  *Id.*

[13]  *Id.*

[14]  *Id.* at 3-4.

EDO filed suit against iSpot in Delaware alleging iSpot wrongfully filed the California complaint so as to disrupt EDO's funding from Shamrock.[15] iSpot has now moved to stay or dismiss this Delaware Action in favor of the California Action.[16]

## II. APPLICABLE LEGAL STANDARDS

### A. MOTION TO STAY OR DISMISS FOR IMPROPER VENUE

Superior Court Civil Rule 12(b)(3) allows for the dismissal or stay of an action due to improper venue. "Courts may dismiss or stay a matter under Rule 12(b)(3) 'in deference to a first-filed case in a different jurisdiction' under the well-settled *McWane* doctrine."[17] "Generally, under the *McWane* doctrine, 'litigation should be confined to the forum in which it is first commenced,' a concept impelled by 'considerations of comity and the necessities of an orderly and efficient administration of justice.'"[18]

*McWane* requires the Court to ask: "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving

---

[15] Compl. ¶¶ 80-84.

[16] D.I. 12.

[17] *EnVen Energy Corp. v. Dunwoody*, 2020 WL 2770609, at *3 (Del. Ch. May 28, 2020) (quoting *PPL Corp. v. Riverstone Hldgs. LLC*, 2019 WL 5423306, at *6 (Del. Ch. Oct. 23, 2019)).

[18] *Nat'l Fire Ins. Co. of Pittsburgh, PA v. Trustwave Ltd.*, 2017 WL 7803921, at *2 (Del. Super. Ct. Dec. 21, 2017) (quoting *McWane*, 263 A.2d at 283).

the same parties and the same issues?"[19] "If all three criteria are met, *McWane* and its progeny establish a strong preference for the litigation of a dispute in the forum in which the first action was filed."[20]

"While '[a] party may move for either a stay or dismissal under *McWane*, . . . dismissals are rarely granted when the first-filed doctrine is invoked.'"[21] "Under *McWane*, 'it is preferable to merely stay the later-filed action because it is impossible to predict with certainty the course of earlier-filed litigation in another jurisdiction.'"[22]

## B. MOTION TO DISMISS

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[23] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the

---

[19]  *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015) (internal citation omitted).

[20]  *Id.* (citation and quotation marks omitted).

[21]  *Riordan Ltd. v. IVN Consulting, LLC*, 2021 WL 2879786, at *4 (Del. Ch. July 9, 2021) (alteration in original) (citing 1 DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 5.01[a], at 5-3 (2nd ed. 2020)).

[22]  *Id.* (citing *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *6 (Del. Ch. Apr. 12, 1994)).

[23]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (cleaned up) (quoting Super. Ct. Civ. R. 12(b)(6)).

non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[24]

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[25] If the claimant may recover under that standard, then the Court must deny the motion to dismiss.[26] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[27]

## III. DISCUSSION

### A. iSpot Cannot Gain 12(b)(6) Dismissal Under Either a General Litigation Privilege or the Judicial Proceedings Privilege.

iSpot argues EDO's tortious interference of prospective business relationships claim (Count I) is barred by both a general litigation privilege and by the judicial proceedings privilege.[28] Concerning the general litigation privilege, iSpot argues "the filing of a lawsuit is a privileged action and cannot form the basis of liability

---

[24] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[25] *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[26] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[27] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004) (citation omitted).

[28] Def.'s Mot. to Dismiss at 17-20, Aug. 15, 2022 (D.I. 13).

for tortious interference, so long as the filing is in good faith."[29]  Concerning the judicial proceedings privilege, iSpot argues the statements made in the California complaint cannot be used as a basis for the Delaware Action, and devoid of those statements  the Complaint is void of reasonable conceivability and thus fails under Rule 12(b)(6).[30]

First, Delaware allows tortious interference in a prospective business relationship claim based on a malicious lawsuit.[31]  While the filing of a lawsuit is generally a "privileged action and cannot form the basis of liability for tortious interference," that privilege does not extend to lawsuits filed in bad faith.[32]  iSpot argues EDO hasn't shown it acted maliciously or in bad faith; for support it points out merely that those instances where courts have found malice or bad faith seemed far more severe than the facts here.[33]  At this pleading stage, the Court finds the allegations of malice or bad faith survive 12(b)(6) review.  The eventual merit of the allegation is both fact intensive and likely dependent on discovery in California.

Second, the judicial proceedings privilege is not applicable here.  The judicial

---

[29]  *Id.* at 17-18 (citation omitted).

[30]  *See id.* at 17-20.

[31]  *See OptimisCorp v. Waite*, 2015 WL 5147038, at *78 (Del. Ch. Aug. 26, 2015) (citation omitted)).

[32]  *Id.*

[33]  Reply Br. at 16, Oct. 25, 2022 (D.I. 20).

proceedings privilege derives from:

> a common law rule, long recognized in Delaware, that protects from actions for *defamation statements* of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements [were] issued as part of a judicial proceeding and were relevant to a matter at issue in the case.[34]

But the Delaware Complaint is not based on defamatory statements. It is based on the filing of the California Action itself.

iSpot contends the privilege is not restricted to just defamatory statements.[35] For this proposition, iSpot depends on the Delaware Supreme Court's decision in *Barker v. Huang*,[36] the United States District Court for the District of Delaware's decision in *Hoover v. Van Stone*,[37] and this Court's decision in *BRP Hold Ox, LLC v. Chilian*.[38] But a careful reading of these cases reveals they do not stand for that which iSpot posits.

In *Hoover v. Van Stone*, the federal district court granted summary judgment on claims including tortious interference with a contractual relationship, when the tortious interference claim was indeed based on defamatory statements.[39] In *Barker*

---

[34] *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992) (emphasis added) (citations omitted).

[35] Reply Br. at 17; *see* Def.'s Mot. to Dismiss at 18.

[36] 610 A.2d 1341 (Del. 1992).

[37] 540 F.Supp. 1118 (D. Del. 1982).

[38] 2018 WL 5734648 (Del. Super. Ct. Oct. 31, 2018).

[39] *Hoover*, 540 F.Supp. at 1122 ("At the outset, the Court must address the first prerequisite for claiming the absolute privilege-whether the allegedly defamatory statements in this case were

-8-

*v. Huang*, our Supreme Court found the privilege applied "regardless of the tort theory by which the plaintiff seeks to impose liability."[40]  But the Court limited that application "[t]o the extent that such [alleged defamatory] *statements* were made in the course of judicial proceedings."[41]  And while *BRP Hold Ox* held "[d]efamation need not accompany other claims for the absolute privilege to apply," it was not the filing of the complaint but rather statements from an allegedly defamatory demand that formed the basis for the tortious interference in a business relationship claim.[42]  So, these cases might stand for the proposition that the privilege can apply to more than just a defamation claim.  But, no doubt, there also must be some allegation of some specific defamatory statement for that specific privilege to apply.

Here, EDO's tortious interference with prospective business relationships claim is not grounded on some allegation of defamatory statements.  It's the filing of the California complaint itself on which EDO's Delaware tortious interference claim is based.[43]

---

made during the course of a judicial proceeding, and thus arose in a privileged context. If the occasion on which the statements were made is privileged, the Court must then determine whether the contents of the statements were pertinent to this action." (citation omitted)).

[40]  *Barker*, 610 A.2d at 1349.

[41]  *Id.* (emphasis added).

[42]  *BRP Hold Ox, LLC*, 2018 WL 5734648, at *5

[43]  Compl. ¶ 83 ("On information and belief, iSpot acted on that knowledge and filed baseless claims against EDO in its March 7, 2022 amended complaint with the intent to disrupt EDO's expected equity infusion from Shamrock.").

The Delaware Complaint is based on the fact the California complaint was filed, not on any supposed defamatory allegations made therein. So, in these circumstances, the judicial proceedings privilege doesn't doom EDO's tortious interference claim. Accordingly, iSpot's Motion to Dismiss that claim under Rule 12(b)(6) is **DENIED**.

## B. THE DELAWARE ACTION WILL BE STAYED PENDING THE OUTCOME OF THE CALIFORNIA ACTION.

"Granting a stay is a discretionary enterprise and derives from a court's inherent power to control its docket."[44] "A court may grant a stay 'on the basis of comity, efficiency, or common sense.'"[45] "A stay of any aspect of litigation shouldn't be granted automatically; it should be granted only if the opponent wouldn't be prejudiced by the delay and considerations of expense and litigation economy predominate."[46] "And when resolving whether to stay or not, the Court 'must make a particularized judgment evaluating the weight that [purported] efficiency should be afforded . . . and the significance of any risk of injury to [a party] . . . that might eventuate from a stay.'"[47]

---

[44] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *7 (Del. Super. Ct. Aug. 31, 2021) (citing *Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012)).

[45] *LightLab Imaging, Inc. v. Axsun Techs., Inc.*, 2012 WL 1764225, at *1 (Del. Ch. May 10, 2012) (quoting *Julian v. Julian*, 2009 WL 2937121, at *8 (Del. Ch. Sept. 9, 2009)).

[46] *Lima USA, Inc.*, 2021 WL 5774394, at *7 (citing *Schick, Inc. v. Amalgamated Clothing & Textile Workers Union*, 1987 WL 12450, at *2 (Del. Ch. June 18, 1987)).

[47] *Id.* (alterations in original) (quoting *In re McCrory Parent Corp.*, 1991 WL 137145, at *1 (Del. Ch. July 3, 1991)).

Here, there are two actions—a first-filed action in California, and a second-filed action in Delaware.[48] The parties in both actions are effectively the same.[49] iSpot's California Action seeks to determine whether EDO breached: (1) its contracts with iSpot; and (2) state and federal laws.[50] EDO's suit here seeks to determine whether iSpot's California Action was brought to disrupt EDO's business relationship with Shamrock.[51] While they have different claims they are indeed closely related; the Delaware Action is a direct response to the California Action.[52]

The *McWane* doctrine might well apply even where the competing suits aren't identical.[53] This is particularly so where a natural question arises as to efficiency and duplication. Without doubt, that question looms large here—first in relation to discovery; second, in relation to outcome.

iSpot professes that discovery in these two suits wouldn't or shouldn't overlap:

---

[48] *See* Compl.; California Action.

[49] California Action ¶¶ 58-88. The difference in parties is Nadya Teyfukova, EDO's employee who is only named in the state and federal misappropriation of trade secret claims, and federal copyright act claim, but not the breach-of-contract claim. *Id.*

[50] *Id.*

[51] Compl. ¶¶ 80-84.

[52] *Id.* ¶ 84 ("iSpot's baseless claims disrupted EDO's equity infusion deal with Shamrock, causing substantial economic harm to EDO.").

[53] *Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7456003, at *2 (Del. Ch. Nov. 20, 2015) ("The *McWane* doctrine favors granting a stay not only where the parties and issues are identical, but also where there exists substantial or functional identity between the two such that they arise out of a common nucleus of operative fact." (citations and quotation marks omitted).

-11-

In iSpot's [California] claim, the people with relevant knowledge of the facts are mostly EDO employees—who allegedly "stole" iSpot data from 2016 through 2018. In EDO's claim, the people with relevant knowledge are mostly iSpot employees—who gathered information for and approved filing the Breach Complaint in 2021 and 2022. And not only don't the witnesses and time periods for the claims overlap, the *facts* they support don't either. While a subset of documents may be relevant to both actions, discovery on iSpot's breach claim concerns what EDO employees were *doing* with iSpot data in 2017, whereas discovery on EDO's tortious interference claim concerns what iSpot employees were *thinking* about allegations in the Breach Complaint years later.[54]

But in this very explanation iSpot must concede that at least some "subset of documents may be relevant to both actions."[55] Ostensibly, what will be gleaned in the California discovery (pending the inevitable dispositive motions) will be used in the Delaware Action. While iSpot vainly insists otherwise, there is little doubt the information developed during the California Action will be key in the litigation of the Delaware Action. So allowing the Delaware Action to proceed will lead to overlapping discovery and engender disordered and inefficient administration of justice.[56]

Second, the outcome of the California Action will not only inform various facets of the Delaware Action, that outcome has an even chance of rendering the

---

[54] Pl.'s Answering Br. at 16, Oct. 3, 2022 (D.I. 19) (emphasis in original).

[55] *Id.*

[56] *Nat'l Fire Ins. Co. of Pittsburgh, PA*, 2017 WL 7803921, at *2 ("Generally, under the *McWane* doctrine, 'litigation should be confined to the forum in which it is first commenced,' a concept impelled by 'considerations of comity and the necessities of an orderly and efficient administration of justice.'" (quoting *McWane*, 263 A.2d at 283)).

Delaware suit unnecessary or unviable.

"EDO alleges that, because the evidence iSpot had at the time was inconsistent with breach, iSpot *pled* its claim in bad faith."[57] But if discovery from California reveals that iSpot had evidence at the time that was consistent with breach, then the underpinnings of this aspect, if not the whole, of EDO's Delaware Action would likely erode.[58] That outcome is suggested by EDO itself.[59] And EDO itself admits that at this point: "'[I]t is impossible to predict with certainty the course of' the California Action."[60] Given EDO's own recognition that the California Action's result will likely affect the necessity and viability of the suit here, the suit here will be stayed pending resolution of that California Action.

---

[57] Pl.'s Answering Br. at 1(emphasis in original).

[58] At argument, EDO insisted that its claim was detached enough to move forward. It says even if iSpot's California lawsuit is a winner, it can still be the basis for EDO's tortious interference claim here. Arg. Tr. at 26-27, Dec. 6, 2022 (D.I. 22) (EDO's counsel invoking the Restatement of Torts). But the Restatement provides that:

> The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having *some* belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication. RESTATEMENT (SECOND) OF TORTS § 767 (1979) (emphasis added) (citation omitted).

And though it incants the theoretical potential of a good-lawsuit/malicious-intent tortious interference charge, EDO has brought no such claim here. Again, both here and in California, EDO claims iSpot's malice and bad faith are evidenced, in large part, by its suit's lack of merit.

[59] Compl. ¶ 5 ("Perhaps if iSpot had a meritorious breach-of-contract claim against EDO, none of that would have mattered. But it didn't.").

[60] Pl.'s Answering Br. at 21 (alteration in original) (quoting *Schnell*, 1994 WL 148276, at *6).

## IV. CONCLUSION

A stay here is warranted. Without question, allowing this suit to proceed alongside the California Action will require overlapping discovery, will waste both party and judicial efforts, and could well lead to inconsistent outcomes.[61]

Accordingly, iSpot's prayer for a Stay under Rule 12(b)(3) is **GRANTED**; its application for dismissal under both Rules 12(b)(3) and 12(b)(6) is **DENIED**.

The parties shall file a joint status report within 14 days of any dispositive ruling in the California Action.

**IT IS SO ORDERED**.

_____
Paul R. Wallace, Judge

---

[61] *See FWM Corp. v. VKK Corp.*, 1992 WL 87327, *2 (Del. Ch. Apr. 27, 1992) ("[I]f I do not stay this action, judicial resources will be wasted in having both courts expending their efforts in attempting to address this issue until one of the courts actually decides the issue. Likewise, defendants also will be wasting resources because they will be fighting the same battle on two fronts when, ultimately, the decision of only one of the courts will matter.").